No. 23-10707

# In the United States Court of Appeals For the Fifth Circuit

SECOND AMENDMENT FOUNDATION, ET AL,

*Plaintiffs*

NATIONAL RIFLE ASSOCIATION OF AMERICA,

*Movant-Appellant*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; STEVEN DETTELBACH, IN HIS OFFICIAL CAPACITY; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, IN HIS OFFICIAL CAPACITY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
No. 3:21-cv-00116

## BRIEF FOR MOVANT-APPELLANT

WILLIAM A. BREWER III
MATTHEW H. DAVIS
NOAH PETERS
Brewer Attorneys & Counselors
1717 Main Street, Suite 5900
Dallas, TX 75201
(214) 653-4000
nbp@brewerattorneys.com

July 24, 2023                    Counsel for Movant-Appellant

## CERTIFICATE OF INTERESTED PERSONS

(1) No. 23-10707, *National Rifle Association of America v. Bureau of Alcohol*;

(2) The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of the Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this court can evaluate possible disqualification or recusal.

National Rifle Association of America, Inc., *Plaintiff-Appellant*
William A. Brewer III, *Counsel for Plaintiff-Appellant*
Matthew H. Davis, *Counsel for Plaintiff-Appellant*
Noah Peters, *Counsel for Plaintiff-Appellant*
Brewer Attorneys & Counselors PLLC, *Counsel for Plaintiff-Appellant*
Sean R. Janda, *Counsel for Defendants-Appellee*
Benjamin R. Lewis, *Counsel for Defendants-Appellee*
Brian M. Boynton, *Counsel for Defendants*
Brigham J. Bowen, *Counsel for Defendants*
Michael Drezner, *Counsel for Defendants*
Brian Stoltz, *Counsel for Defendants*
Abby Wright, *Counsel for Defendants*
Jody Lowenstein, *Counsel for Defendants*
Taylor Pitz, *Counsel for Defendants*
Second Amendment Foundation, *Plaintiff*
Rainier Arms, LLC, *Plaintiff*
Samuel Walley, *Plaintiff*
William Green, *Plaintiff*
Chad Flores, *Counsel for Plaintiff*
David Jones, *Counsel for Plaintiff*

/s/ Noah Peters
NOAH PETERS
Attorney of Record for Movant-
Appellant

i

## STATEMENT REGARDING ORAL ARGUMENT

Movant-Appellant, the National Rifle Association of America ("NRA"), respectfully requests oral argument. The district court plainly erred in denying the NRA's motion to intervene.  It cited no prejudice to existing parties resulting from any delay in moving to intervene.  And it admitted that the NRA's interests were not adequately represented by the existing parties. Nonetheless, it inexplicably denied intervention.  Both the Supreme Court's decision last year in *Berger v. N. Carolina State Conf. of the NAACP*,[1] along with precedent from both this Court[2] and the D.C. Circuit,[3] show that the district court's decision below was incorrect and should be reversed. Oral argument would significantly aid the Court in evaluating the issues in this case.

---

[1] 142 S. Ct. 2191 (2022).

[2] *Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198 (5th Cir. 2016); *John Doe 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994).

[3] *Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

STATEMENT REGARDING ORAL ARGUMENT ..................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iv

I.   JURISDICTION ..................................................................................................1

II.  STATEMENT OF ISSUES ....................................................................................2

III. STATEMENT OF THE CASE ................................................................................2

   A.   THE NRA IS THE NATION'S LARGEST GUN RIGHTS ADVOCACY
   GROUP ...............................................................................................................2

   B.   ATF REPEATEDLY FINDS THAT PISTOLS WITH SHOULDER BRACES
   ARE NOT RIFLES .................................................................................................3

   C.   ATF REVERSES ITS POSITION .....................................................................7

   D.   THE NRA SEEKS TO INTERVENE AFTER THE DISTRICT COURT
   PRELIMINARILY ENJOINED THE FINAL RULE AS TO THE SAF'S
   MEMBERS, BUT NOT THE NRA'S MEMBERS ......................................................9

IV.  SUMMARY OF THE ARGUMENT .....................................................................12

V.   ARGUMENT ...................................................................................................16

   A.   THE DISTRICT COURT ERRED IN DENYING INTERVENTION AS OF
   RIGHT ..............................................................................................................16

      1.   This Court's Review is *De Novo* ...............................................................16

      2.   Rule 24 Is Broadly Construed in Favor of Intervention.............................16

      3.   The NRA Timely Filed its Motion...............................................................18

      4.   The NRA Has An Interest Relating to the Subject of This Action.............30

      5.   Absent Intervention, the NRA's Ability to Defend its Members' Interests
      Will Be Impaired ..........................................................................................32

      6.   Neither the Interests of the NRA Nor Its Members Are Adequately
      Represented by Plaintiffs..............................................................................34

   B.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING
   PERMISSIVE INTERVENTION ............................................................................42

1.  The Court Reviews Denial of Permissive Intervention for Abuse of Discretion.................................................................42

2.  The NRA Clearly Satisfies the Standards for Permissive Intervention......43

3.  The NRA Timely Filed its Motion..............................................44

4.  The NRA's Claims Share Common Questions of Law and Fact with the Existing Case Below............................................................44

5.  The NRA's Intervention Will Not Prejudice the Original Parties.............45

6.  The NRA is Not Adequately Represented by Plaintiffs............................49

VI.   CONCLUSION........................................................................49

VII.   CERTIFICATE OF SERVICE ....................................................51

VIII.   CERTIFICATE OF COMPLIANCE ...........................................52

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Action All. of Senior Citizens of Greater Philadelphia v. Heckler,*
789 F.2d 931 (D.C. Cir. 1986) .............................................................. 28

*ADT, LLC v. Cap Connect, Inc.,*
145 F. Supp. 3d 671 (N.D. Tex. 2015) ................................................. 29

*Am. Pipe & Const. Co. v. Utah,*
414 U.S. 538 (1974) .............................................................................. 44

*Banco Popular de Puerto Rico v. Greenblatt,*
964 F.2d 1227 (1st Cir.1992) ................................................................ 25

*Barnes v. Security Life of Denver Ins.,*
945 F.3d 1112 (10th Cir. 2019) ............................................................ 32

*Berger v. N. Carolina State Conf. of the NAACP,*
142 S. Ct. 2191 (2022) .................................................................. *passim*

*Brumfield v. Dodd,*
749 F.3d 339 (5th Cir. 2014) ................................................................ 32

*Ceres Gulf v. Cooper,*
957 F.2d 1199 (5th Cir. 1992) ........................................... 16, 26, 32, 33

*Crawford v. Metro. Life Ins. Co.,*
756 F. App'x 350 (5th Cir. 2018) ......................................................... 16

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.,*
266 F.R.D. 369 (D. Ariz. 2010) ............................................................ 31

*Data Mktg. P'ship, LP v. United States Dep't of Lab.,*
45 F.4th 846 (5th Cir. 2022) .................................................... 20, 22, 48

*DeOtte v. Azar,*
332 F.R.D. 173 (N.D. Tex. 2019) ......................................................... 17

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
140 S. Ct. 1891 (2020) .......................................................................... 21

iv

*Deus v. Allstate Ins. Co.*,
15 F.3d 506 (5th Cir. 1994) ........................................................................15, 16

*Diaz v. S. Drilling Corp.*,
427 F.2d 1118 (5th Cir. 1970) ............................................................................44

*E. Paralyzed Veterans Ass'n of Pennsylvania, Inc. v. Se. Pennsylvania Transp. Auth.*,
No. CIV.A. 85-4460, 1986 WL 4533 (E.D. Pa. Apr. 16, 1986)........................29

*E.E.O.C. v. Regis Corp.*,
No. 99 C 8270, 2001 WL 1911025 (N.D. Ill. Jan. 17, 2001) ............................17

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ........................................................................*passim*

*Elrod v. Burns*,
427 U.S. 347 (1976)............................................................................................48

*Entergy Gulf States Louisiana, L.L.C. v. EPA*,
817 F.3d 198 (5th Cir. 2016) ..................................................................34, 36, 37

*Field v. Anadarko Petroleum Corp.*,
35 F.4th 1013 (5th Cir. 2022) ............................................................................23

*Franciscan All., Inc. v. Azar*,
414 F. Supp. 3d 928 (N.D. Tex. 2019) ..............................................................31

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)............................................................................................28

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*,
382 U.S. 205 (1965)............................................................................................16

*John Doe 1 v. Glickman*,
256 F.3d 371 (5th Cir. 2001) ......................................................................*passim*

*In re Lease Oil Antitrust Litig.*,
570 F.3d 244 (5th Cir. 2009) ....................................................................26, 40

*Louisiana v. Becerra*,
20 F.4th 260 (5th Cir. 2021) ............................................................................21

*Louisiana v. Horseracing Integrity & Safety Auth. Inc.*,
No. 6:22-CV-01934, 2022 WL 2960031 (W.D. La. July 26, 2022) .................48

*McDonald v. E. J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) .......................................................................23, 42

*Mendez v. City of Gardena*,
222 F. Supp. 3d 782 (C.D. Cal. 2015) ..................................................................29

*Meridian Homes Corp v. Nicholas W. Prassas & Co.*,
683 F.2d 201 (7th Cir. 1982) ................................................................................36

*Midwest Realty Mgmt. Co. v. City of Beavercreek*,
93 F. App'x 782 (6th Cir. 2004)............................................................................29

*Mock v. Garland*,
No. 23-10319 (5th Cir. 2023) ...............................................................10, 11, 20

*Mock v. Garland*,
No. 4:23-CV-00095-O, 2023 WL 2711630 (N.D. Tex. Mar. 30,
2023) .......................................................................................................................20

*Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*,
831 F.2d 59 (5th Cir. 1987) ...................................................................................16

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*,
145 F.3d 1399 (D.C. Cir. 1998)............................................................................21

*Opulent Life Church v. City of Holly Springs, Miss.*,
697 F.3d 279 (5th Cir. 2012) ................................................................................48

*Polymer80, Inc. v. Garland*,
No. 4:23-CV-00029-O, 2023 WL 3605430 (N.D. Tex. Mar. 19,
2023) .......................................................................................................................48

*Reich v. Webb*,
336 F.2d 153 (9th Cir. 1964) .................................................................................15

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014).........................................................13, 14, 23, 24

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) ..........................................................................25, 46

vi

*SEC v. Bear, Stearns & Co. Inc.*,
  No. 03 CIV.2937 WHP, 2003 WL 22000340 (S.D.N.Y. Aug. 25,
  2003) ................................................................................................47

*Second Amendment Foundation, et al. v. Bureau of Alcohol, Tobacco,
  Firearms and Explosives, et al.*,
  Civil Action No. 6:23-CV-00013 (N.D. Tex. May 31, 2023) .....................18, 20

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..................................................................*passim*

*Sierra Club v. Fed. Emergency Mgmt. Agency*,
  No. CIV. A. H-07-0608, 2008 WL 2414333 (S.D. Tex. June 11,
  2008) ................................................................................................29

*Sig Sauer, Inc. v. Brandon*,
  826 F.3d 598 (1st Cir. 2016)..................................................................6, 7

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
  914 F.3d 969 (5th Cir. 2019) ..................................................................29

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ..................................................................*passim*

*In re Stingfree Techs. Co.*,
  427 B.R. 337 (E.D. Pa. 2010) ..................................................................29

*Sw. Ctr. For Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ..................................................................17

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ..................................................................21, 22

*Trans World Airlines, Inc. v. Mattox*,
  712 F. Supp. 99 (5th Cir. 1989)..............................................................32, 39, 45

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977)................................................................................30

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ..................................................................17

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019) ........................................................... 21

*Utah Ass'n of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ................................................... 25, 46

*VanDerStok v. BlackHawk Mfg. Grp. Inc.*,
    No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3,
    2022) ........................................................................ 29, 32, 39, 45

*VanDerStok v. Garland*,
    No. 4:22-CV-691-O. 2022 WL 19023858 (N.D. Tex. Dec. 19,
    2022) ..................................................................................... *passim*

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ............................................................... 44

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990) ................................................................. 15

**Statutes**

5 U.S.C. § 702 ........................................................................................... 2

5 U.S.C. § 706 ......................................................................................... 10

18 U.S.C. § 921(a)(3) ............................................................................... 4

18 U.S.C. § 921(a)(7) ........................................................................... 5, 7

18 U.S.C. § 921(a)(30) ............................................................................. 5

26 U.S.C. § 5812 ...................................................................................... 4

26 U.S.C. § 5822 ...................................................................................... 4

26 U.S.C. § 5841 ...................................................................................... 4

26 U.S.C. § 5845(a) .................................................................................. 4

26 U.S.C. § 5845(c) ............................................................................... 5, 8

26 U.S.C. § 5871 ...................................................................................... 4

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1331 ...................................................................................2

**Other Authorities**

27 C.F.R. § 478.11 .............................................................................7, 8

27 C.F.R. § 479.11 ................................................................................8

27 C.F.R. §§ 479.61, 479.62 .................................................................4

27 C.F.R. §§ 479.66, 479.84 .................................................................4

27 C.F.R. §§ 479.84(c), 479.85 .............................................................4

27 C.F.R. §§ 479.101, 479.102 .............................................................4

28 C.F.R. § 0.131(d) .............................................................................4

Black's Law Dictionary 555 (3d Pocket ed. 2006) ......................25, 46

"Factoring Criteria for Firearms with Attached 'Stabilizing Braces,'"
   88 Fed. Reg. 6478 (Jan. 31, 2023) ...............................1, 6, 7, 9, 20, 48

Fed. R. Civ. P. 1 .................................................................................49

Fed. R. Civ. P. 24 ........................................................................*passim*

Fed. R. Civ. P. 24(a) ...................................................................*passim*

Fed. R. Civ. P. 24(a)(2) ......................................................................31

Fed R. Civ. P. 24(b) .....................................................................1, 2, 43

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev.
   1121 (2020) .................................................................................20, 48

Second Amendment Foundation, "SAF Invites NRA Members to Join
   After Judge Denies Intervention" (June 30, 2023), *available at*
   https://www.saf.org/saf-invites-nra-members-to-join-after-judge-
   denies-intervention/ ......................................................28, 38, 39, 48

U.S. Constitution, Amendment II ................................................1, 3, 10

# I. JURISDICTION

This Court has jurisdiction over this appeal from the District Court's Memorandum Opinion and Order[4] denying the National Rifle Association of America ("**NRA**") intervention as of right under Fed. R. Civ. P. 24(a) and permissive intervention under Fed R. Civ. P. 24(b). The Memorandum Opinion and Order was issued on June 30, 2023.[5] The NRA timely filed this appeal on July 3, 2023.[6]

The NRA sought to intervene in a lawsuit brought by a separate gun-rights group, the Second Amendment Foundation ("**SAF**"), along with three other plaintiffs: Rainier Arms, LLC ("**Rainier**"), Samuel Walley ("**Walley**"), and William Green ("**Green**") (together with SAF, "**Plaintiffs**"). Plaintiffs bring Administrative Procedure Act ("**APA**") challenges[7] to a rule promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("**ATF**") entitled "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" (the "**Final Rule**").[8] The Final Rule seeks to classify pistols with stabilizing braces as short-barreled rifles, subjecting the use and transfer of those firearms to heightened regulatory and criminal penalties under the

---

[4] ROA.1010-1021.

[5] ROA.1010.

[6] ROA.1022.

[7] ROA.239-248.

[8] *See* Final Rule issued by ATF on Jan. 31, 2023, 88 Fed. Reg. 6478, 6574 (Jan. 31, 2023). The defendants below were ATF, Steven M. Dettelbach, in his official capacity as Director of ATF, the United States Department of Justice, and Merrick B. Garland, in his official capacity as Attorney General of the United States (together, "**Agencies**" or "**Defendants**").

1

National Firearms Act ("**NFA**"). The District Court had jurisdiction over the suit pursuant to under 5 U.S.C. § 702 and 28 U.S.C. § 1331.

"The denial of a motion to intervene of right is an appealable final order under 28 U.S.C. § 1291."[9] This Court's reviews denial of intervention as of right *de novo*.[10]

Further, this Court has "provisional jurisdiction" to determine whether the District Court abused its discretion in denying the NRA permissive intervention.[11] "[I]f the district court abused its discretion in denying the Rule 24(b) motion" for permissive intervention, "we retain jurisdiction and must reverse."[12]

## II. STATEMENT OF ISSUES

1.      Whether the District Court erred in denying the NRA intervention as of right under Fed. R. Civ. P. 24(a).

2.      Whether the District Court erred in denying the NRA permissive intervention under Fed. R. Civ. P. 24(b).

## III.   STATEMENT OF THE CASE

### A. THE NRA IS THE NATION'S LARGEST GUN RIGHTS ADVOCACY GROUP

The NRA is a non-profit membership organization, committed to providing marksmanship and gun safety education for the military, law enforcement and

---

[9] *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996).
[10] *Id*. at 995.
[11] *Id*. at 992.
[12] *Id*.

2

civilians.[13] It the largest and most effective defender of the right of all law-abiding individuals to purchase, possess, and use firearms, as guaranteed by the Second Amendment to the U.S. Constitution.[14] The NRA represents millions of members across the nation, including approximately 350,000 members in Texas, in preserving and defending the rights of gun owners.[15]

The NRA is a member-run organization.[16] Each member of the NRA's 76-person, independent Board of Directors is elected directly by the NRA's members via a balloting process.[17] In addition, NRA members are the primary source of financing for the NRA.[18] The NRA (or its affiliates) solicit membership dues, donations, and political contributions from its approximately 5 million members.[19]

## B. ATF REPEATEDLY FINDS THAT PISTOLS WITH SHOULDER BRACES ARE NOT RIFLES

The Government regulates firearms primarily through two federal statutes: the NFA and the Gun Control Act of 1968 (the "**GCA**").[20] The exact legal obligations related to a particular firearm depend largely on the statutory scheme to which it is subject.

---

[13] ROA.663 ¶¶9-10.
[14] *Id.*
[15] ROA.665 ¶16.
[16] ROA.1007-1009.
[17] ROA.1008 ¶4.
[18] *Id.* at ¶9.
[19] *Id.*
[20] ROA.668 ¶32.

3

The GCA's threshold "firearm" definition is broader than the NFA's—it includes rifles *and* handguns.[21] The NFA, on the other hand, defines "firearm" to include only short-barreled "rifles" and a few other discrete items, but not handguns.[22] Congress imposed an onerous set of legal restrictions on the narrow set of "firearms" under the NFA. Indeed, firearms that fall within the NFA's jurisdiction are subject to substantially more regulation than those firearms that do not.[23] NFA firearm transfers must submit an application and pay an additional tax.[24] NFA firearm recipients must provide ATF with fingerprints and notify a local police department of the transfer.[25] NFA firearm possessors must register themselves in a federal firearm database.[26] Violations of NFA requirements can be punished with imprisonment for up to ten years and fines up to ten thousand dollars.[27] In addition to these federal requirements, some states apply additional regulations to NFA

---

[21] *See* 18 U.S.C. § 921(a)(3).

[22] *See* 26 U.S.C. § 5845(a) ("The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device.").

[23] 26 U.S.C. § 5822; 27 C.F.R. §§ 479.61, 479.62.

[24] 26 U.S.C. § 5812; 27 C.F.R. §§ 479.66, 479.84.

[25] 26 U.S.C. § 5812; 27 C.F.R. §§ 479.84(c), 479.85.

[26] 26 U.S.C. § 5841; 28 C.F.R. § 0.131(d); 27 C.F.R. §§ 479.101, 479.102.

[27] 26 U.S.C. § 5871.

firearms, including complete bans. Thus, classification of certain firearms as NFA-regulated may result in these firearms becoming contraband in some states.[28]

The NFA and GCA define a "rifle" almost identically. The GCA defines a "rifle" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.[29]

The NFA defines a "rifle" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.[30]

While the NFA does not define a "handgun," the GCA does:[31]

> (a) As used in this chapter -
>
>      *    *    *
>
>  (30) The term "handgun" means—
>
>   (A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and
>
>   (B) any combination of parts from which a firearm described in subparagraph (A) can be assembled.[32]

---

[28] ROA.669 ¶36.

[29] 18 U.S.C. § 921(a)(7).

[30] 26 U.S.C. § 5845(c).

[31] Initially, the drafters of the NFA sought to include pistols within the legislation. But pistols were excluded from the NFA's final version. ROA.010 ¶44, n.12.

[32] 18 U.S.C. § 921(a)(30).

"Arm braces" or "stabilizing braces" are a common firearm accessory used with handguns.[33] They allow the bearer to stabilize the firearm against the forearm of the same arm that is holding the firearm.[34] Originally developed by Army veteran Alex Bosco to help disabled combat veterans, stabilizing braces are now used both by those with and without disabilities to facilitate safe and accurate firearm use that cannot be otherwise achieved.[35]

Bosco sought approval from the ATF. In response, in 2012, ATF determined that attaching the submitted "brace" to a firearm did not change the firearm's classification as a pistol and, therefore, did not subject it to NFA controls. In reliance on this guidance, Bosco co-founded SB Tactical with Grant Shaw and began making production prototypes.[36] Since then, ATF has approved multiple similar brace designs through classification letters.[37] "[A] classification letter sets forth the agency's official position concerning the status of the firearms under Federal firearms laws."[38] "ATF permits—but does not require—gun makers to seek classification letters prior to manufacturing a gun."[39]

---

[33] *See* Final Rule, 88 Fed. Reg. at 6479-6494.
[34] *See id.*
[35] *See id.*; *see also* ROA.671 ¶49.
[36] ROA.671 ¶49.
[37] ROA.672 ¶¶51-52.
[38] *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 600 (1st Cir. 2016).
[39] *Id.* at 599.

As a result of the ATF's consistent and longstanding history of classifying stabilizing braces as exempt from NFA registration, millions of law-abiding consumers have purchased pistols with stabilizing braces—including many who rely on those braces because they are disabled.[40] Many companies started manufacturing and evolving pistol braces to adjust to the users' wants and needs.[41] These products were developed following the legal guidelines set forth by ATF in combination with industry leaders.[42] Indeed, a 2021 Congressional Research Service report cites estimates of from 10 to 40 million pistol braces owned by Americans.[43]

### C. ATF REVERSES ITS POSITION

On January 31, 2023, the Agencies committed the final agency action at issue by promulgating the Final Rule.[44] The rule amends the regulations that define "rifle" for GCA and NFA purposes. Before the Agencies promulgated the Final Rule, the regulatory "rifle" definitions simply repeated the statutory definitions. Just like the GCA,[45] the prior version of 27 C.F.R. § 478.11 defined "rifle" as:

> Rifle. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.[46]

---

[40] ROA.661-62 ¶¶2-5, ROA.675-76 ¶¶73-74, 76, ROA.696.
[41] *Id.*
[42] *Id.*
[43] ROA.676-77 ¶77.
[44] *See* 88 Fed. Reg. 6478, 6574 (Jan. 31, 2023).
[45] 18 U.S.C. § 921(a)(7).
[46] 27 C.F.R. § 478.11.

And just like the NFA,[47] the prior version of 27 C.F.R. § 479.11 defined "rifle" as:

> Rifle. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.[48]

The Final Rule effects a sea change. It expressly invalidates every prior arm-brace classification that the ATF had issued.[49] The Final Rule then overhauls the "rifle" definition at 27 C.F.R. § 478.11 and 27 C.F.R. § 479.11 by adding (to the sentence mirroring the statutes) two new paragraphs and six subparagraphs:

> Rifle. A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.
>
> (1)  For purposes of this definition, the term "designed or redesigned, made or remade, and intended to be fired from the shoulder" shall include a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a "stabilizing brace") that provides surface area that allows the weapon to be fired from the shoulder, provided other factors, as described in paragraph (2), indicate that the weapon is designed, made, and intended to be fired from the shoulder.
>
> (2)  When a weapon provides surface area that allows the weapon to be fired from the shoulder, the following factors shall also be

---

[47] 26 U.S.C. § 5845(c).
[48] 27 C.F.R. § 479.11.
[49] *See* Final Rule, 88 Fed. Reg. at 6,480.

8

considered in determining whether the weapon is designed, made, and intended to be fired from the shoulder:

(i)    Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

(ii)    Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;

(iii)    Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

(iv)    Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

(v)    The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

(vi)    Information demonstrating the likely use of the weapon in the general community.[50]

The Agencies now "may seek to enforce the NFA's requirements with respect to any new making or new transfer of a weapon with an attached 'stabilizing brace' that constitutes a short-barreled rifle under the NFA."[51]

### D. The NRA Seeks to Intervene After the District Court Preliminarily Enjoined the Final Rule as to the SAF's Members, But Not the NRA's Members

---

[50] *See id.* at 6574-75.

[51] *Id.* at 6481.

9

On January 15, 2021, before the ATF's rulemaking had even been initiated, Plaintiffs filed suit under the APA and Second Amendment.[52] On February 21, 2023, Plaintiffs filed an amended complaint challenging the Final Rule solely under the APA.[53] The APA requires courts to "hold unlawful and set aside agency action" found to be, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." [54]

On May 25, 2023, the district court entered an Order barring Defendants from enforcing the Final Rule against Plaintiffs (the "**Injunction Order**").[55] On May 31, 2023, the district court entered its Order clarifying the Injunction Order applies to the SAF and its members (the "**Clarification Order**") (together with the Injunction Order, the "**Clarified Injunction Order**").[56] In issuing the Clarified Injunction Order, the district court recognized that this Court had already enjoined application of the Final Rule against the plaintiffs in *Mock v. Garland*,[57] and found that the same

---

[52] ROA.18-35.

[53] ROA.239-248.

[54] 5 U.S.C. § 706 (courts "shall . . . hold unlawful and set aside agency action found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence . . . .; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court").

[55] ROA.572-73.

[56] ROA.616-17.

[57] No. 23-10319 (5th Cir. 2023).

relief granted to the *Mock* plaintiffs was appropriate, i.e. preliminary injunctive relief as to, among others, SAF and its members.[58] The Clarified Injunction Order prohibits Defendants from enforcing the Final Rule against Plaintiffs, including SAF and its members.[59] The Order does not prohibit Defendants from enforcing the Final Rule against the NRA's members, or the general public.

The upshot is that the NRA's members must comply with the Final Rule or face penalties, but the SAF's members need not comply with the Final Rule. The Final Rule remains enforceable as to the NRA's members even though the district court below, and at least one other district court[60] have already held that the elements of injunctive relief are satisfied as to gunowners in nearly identical circumstances to those of the NRA's members.

On June 6, 2023, the NRA sought to intervene to ensure that the constitutional rights of its members are protected by seeking injunctive relief prohibiting Defendants from enforcing the Final Rule against the NRA and its members.[61] It noted that the Final Rule amends the existing definitions of "rifle" in such a way that law abiding citizens cannot objectively determine whether their firearms fall under this new definition.[62] Thus, the NRA's members are faced with a choice of guessing

---

[58] ROA.572-73, ROA.616-17.
[59] *Id.*
[60] S.D. Tex. Order at p.2, n.2.
[61] ROA.692-93.
[62] ROA.662 ¶4, ROA.691-92 ¶¶161-166.

whether their firearms are compliant (and risking felony prosecution if they guess wrong), modifying them, registering them, surrendering them to ATF, or destroying them.[63]

On June 40, 2023, the District Court denied the NRA's intervention in a written opinion.[64] The NRA now brings this appeal.

## IV.   SUMMARY OF THE ARGUMENT

Federal Rule of Civil Procedure 24 promises intervention to anyone who, (1) "[o]n timely motion," (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," (3) "unless existing parties adequately represent that interest."

The NRA's motion to intervene should have been granted as a matter of course. As the district court admitted, "the case is still in its early stages."[65] No answer had been filed and no discovery had occurred. Yet the district court found the motion untimely. In so doing, the district court misapprehended the relevant test. "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure

---

[63] ROA.662 ¶5.
[64] ROA.1010-1021.
[65] ROA.1017.

to apply sooner."[66] But the district court wielded timeliness in just this fashion. It found the NRA's motion untimely ***even while*** acknowledging that "the case is still in its early stages," and citing no prejudice whatsoever resulting from any delay in the NRA's intervention.[67] In so holding, the district court "lost sight of th[e] fundamental principle" that, in measuring timeliness, the court "must weigh whether any delay in seeking intervention ***unfairly disadvantaged the original parties***."[68]

Instead, the district court focused on the NRA's supposed delay in seeking intervention "since the inception of the suit."[69] But this is "not in itself the determinative test."[70] In finding the NRA's intervention untimely, the district court's reasoning amounted to, "Because [the NRA] could have intervened earlier, [it] should have intervened earlier."[71] But such shallow reasoning is "an abuse of the court's discretion."[72] "In focusing on the amount of time that had elapsed between the filing of the lawsuit and [the NRA]'s motion to intervene, the district court overlooked what the relevant caselaw says is the most important consideration: the

---

[66] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).
[67] ROA.1017.
[68] *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (emphasis added).
[69] *Id*. at 151.
[70] *Id*.
[71] *Id*. at 152.
[72] *Id*.

13

fact that granting [the NRA] intervention was highly unlikely to disadvantage the existing parties."[73]

The district court's second ground for denying intervention as of right is even weaker: that the NRA was adequately represented by SAF. The Supreme Court just last year described Rule 24's adequacy prong "as presenting proposed intervenors with only a minimal challenge."[74] And it clarified that any "presumption of adequate representation . . . *applies only when interests overlap fully*."[75]

In this case—by the district court's own admission—the NRA's interests do not "overlap fully" with the interests of other gun-rights groups. The District Court's own opinion speaks clearly on this point, refuting its adequacy analysis:

> In the Amended Complaint, Plaintiffs explicitly "request[ed] a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule against Plaintiffs." And Plaintiffs' subsequent Motion for Preliminary Injunction, filed in early March, likewise sought "a preliminary injunction enjoining the Agencies from enforcing the 'Arm Brace Rule' . . . against the Plaintiffs and postponing the Arm Brace Rule until this litigation's conclusion." So, the NRA was aware of the Rule almost two years ago. And nothing in this case suggested that Plaintiffs were seeking a nationwide preliminary injunction. **Rather, Plaintiffs expressly limited the requested preliminary relief to the named Plaintiffs.**[76]

---

[73] *Id.*
[74] *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022).
[75] *Id.* at 2204.
[76] ROA.1015 (citations omitted, emphasis added).

14

The district court's own words thus show that the interests of the NRA and its members are not adequately represented by Plaintiffs. Plaintiffs sought, and obtained, an injunction against the Final Rule on behalf of themselves and SAF's members—not the NRA's members.[77] Its representation of the NRA was not adequate. That ends the inquiry under *Berger*.[78]

The district court's denial of permissive intervention was an abuse of discretion. It cited the supposed adequacy of SAF's representation of the interests of the NRA's members—ignoring its own finding that the Plaintiffs did not seek or obtain relief that would protect the NRA's members.[79] The district court would require the NRA to file a new, separate lawsuit regarding the very same issues before the court in the suit before it in order to obtain relief.[80] But the purpose of Rule 24 is to avoid this wasteful result.[81] The district court also expressed fears about "an avalanche of motions to intervene."[82] But such fears have no application to the intervention of the nation's largest gun rights advocacy group, with over four million

---

[77] *Id.*

[78] *Compare Berger*, 142 S. Ct. at 2204 (presumption of adequate representation applies only where interests "overlap fully") *with* ROA.1019 (noting that the Plaintiffs purposefully did not seek relief that would benefit the NRA and its members).

[79] ROA.1015.

[80] Because of the irreparable harm facing its members, the NRA filed a new, separate lawsuit immediately upon denial of intervention to ensure its members' interests were protected, while also challenging the District Court's erroneous ruling.

[81] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994); *see also Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *Reich v. Webb*, 336 F.2d 153 (9th Cir. 1964).

[82] ROA.1021.

members—an intervention that would ***avoid*** a circumstance where its members must file individual suits to protect their rights. Indeed, the district court's "floodgates" concern has no application where the alternative is a flood of separate lawsuits, as opposed to interventions.

## V. ARGUMENT

### A. THE DISTRICT COURT ERRED IN DENYING INTERVENTION AS OF RIGHT

#### 1. This Court's Review is *De Novo*

This Court reviews the district court's denial of intervention as of right *de novo*.[83] *De novo* review means that it this Court is reviewing the matter "anew."[84] In so doing, it owes no deference to the district court's decision.[85] However, the district court's timeliness analysis is reviewed for abuse of discretion.[86]

#### 2. Rule 24 Is Broadly Construed in Favor of Intervention

The purpose of Rule 24 is to avoid multiple lawsuits where common questions of law or fact are involved and where an adverse outcome could affect the intervenor's legal rights.[87] As one court has explained:

---

[83] *Edwards*, 78 F.3d at 995.

[84] *Crawford v. Metro. Life Ins. Co.*, 756 F. App'x 350, 352 (5th Cir. 2018).

[85] *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987).

[86] *Id.*; *see also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 n.8 (5th Cir. 1992).

[87] *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 212 (1965); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–65 (5th Cir. 1977) ("two important purposes of Rule 24" are "to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation"); *Deus*, 15 F.3d at 525.

16

The reasons for avoiding a multiplicity of suits are plain. Multiple lawsuits tax judicial resources and frustrate efforts to achieve consistent results in similar cases. Furthermore, multiple lawsuits could gravely prejudice the rights of some plaintiffs through the operation of *stare decisis*. A plaintiff could be prejudiced by the precedential impact of an unfavorable decision in another lawsuit, closely related to his, but in which he was excluded from participation and therefore could not control.[88]

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed" in favor of proposed intervenors.[89] "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."[90] That is, "[b]y allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court."[91] The court must accept nonconclusory allegations in support of the motion to intervene as true.[92]

Rule 24(a) of the Federal Rules of Civil Procedure provides that:

On timely motion, the court ***must*** permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

---

[88] *E.E.O.C. v. Regis Corp.*, No. 99 C 8270, 2001 WL 1911025, at *1 (N.D. Ill. Jan. 17, 2001).

[89] *CNA Metals*, 919 F.3d at 864 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (citation omitted)).

[90] *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

[91] *Id*.

[92] *DeOtte v. Azar*, 332 F.R.D. 173, 184 (N.D. Tex. 2019); *see also Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.").

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[93]

Courts employ a four-factor analysis for evaluating whether a party may, as a matter of right, intervene in a given case under Rule 24.[94] *First*, the third party's application to intervene must be timely.[95] *Second*, the third party must possess an interest relating to the action.[96] *Third*, it must be that the third party, absent intervention, will have its interests practically impaired or impeded.[97] *Fourth*, the third party's interests in the case must not be adequately represented by the current parties.[98]

Here, the NRA seeks to intervene to protect the rights of its members, which are threatened by the Final Rule and which cannot be adequately represented by the Plaintiffs. Its intervention satisfies all four of the factors set forth by this Court for determining whether a party is entitled to intervene under Rule 24(a). The District Court committed clear error in holding otherwise.

### 3.    The NRA Timely Filed its Motion

---

[93] Fed. R. Civ. P. 24(a) (emphasis added).

[94] *CNA Metals Ltd.*, 919 F.3d at 865 (citing *Sierra Club*, 18 F.3d at 1204-05); *see also John Doe 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).

[95] *See CNA Metals Ltd.*, 919 F.3d at 865.

[96] *See id.*

[97] *See id.*

[98] *See id.*

In evaluating timeliness, a court is to consider "four factors: (1) the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case; (2) the extent of prejudice to the existing parties; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances."[99] Here, all four timeliness factors weigh in favor of allowing the NRA to intervene.

The NRA first learned that the potential interests of its members would not be protected in this case as a result of the Injunction Order and Clarification Order, which were entered on May 25, 2023, and May 31, 2023, respectively.[100] In their Injunction Motion, Plaintiffs sought an injunction "postponing the Arm Brace Rule until this litigation's conclusion."[101] This would have protected the NRA and its members. Plaintiffs reiterated this request in their reply brief.[102]

But through the Clarified Injunction Order, the District Court granted a preliminary injunction limited to SAF and its members, along with Rainier, Walley, and Green.[103] The NRA sought to intervene immediately when it became clear that the Plaintiffs could not adequately represent the interests of the NRA and its members in avoiding the extraordinary burdens placed upon them by the Final Rule.

---

[99] *Id.* (citing *Stallworth*, 558 F.2d at 264-66).

[100] *Sierra Club*, 18 F.3d at 1206 (finding that the potential intervener's stake materialized after a preliminary injunction, not when the relevant complaint was filed), ROA.802 ¶21.

[101] Injunction Mot., Doc. 52 at p.22.

[102] Plfs. Reply Br. In Support of Plfs. Mot. for a Preliminary Injunction, Doc. 59 at p.12.

[103] ROA.572-73, ROA.616-17.

Only with the Court's Clarified Injunction Order did it become clear that the Plaintiffs could not obtain preliminary relief that would protect the rights of the NRA and its members. Upon learning of the Order, the NRA immediately pursued intervention to ensure that its interests and those of its members could be protected alongside those of Plaintiffs. Like the intervenor in *CNA Metals*, the NRA "attempted to intervene as soon as it learned that its [members'] interest[s] may be in peril."[104]

The NRA had no way to foresee the narrow scope of the injunction that this Court would enter in *Mock v. Garland*, or that the district court would enter below. The reason for the lack of notice is simple: the parties in *Mock*,[105] the district court,[106] and other court challenges to the Final Rule[107] sought nationwide relief under the APA, and vacatur is the normal remedy under the APA.[108] Under the APA, the default rule has always been, "[w]hen a reviewing court determines that agency

---

[104] *CNA Metals Ltd.*, 919 F.3d at 865.

[105] *Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 2711630 at *5 (N.D. Tex. Mar. 30, 2023).

[106] Injunction Mot., Doc. 52 at p.22 (seeking injunction "postponing the Arm Brace Rule until this litigation's conclusion"), Plfs. Reply Br. In Support of Plfs. Mot. for a Preliminary Injunction, Doc. 59 at p.13 (same).

[107] *See, e.g., Second Amendment Foundation, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, et al., Civil Action No. 6:23-CV-00013 (N.D. Tex. May 31, 2023) (slip op.); *see also State of Tex., et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, Civil Action No. 6:23-CV-00013 (S.D. Tex. May 31, 2023) (slip op.).

[108] *See Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859–60 (5th Cir. 2022); Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1122, (2020) ("A court . . . generally does not set aside [a] rule (or its provisions) as to some parties and not others; vacatur leaves no rule (or provision) in place to enforce against anyone.").

regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."[109] Under the APA, "[t]he ordinary practice is to vacate unlawful agency action."[110]

The District Court suggested the NRA should have known no such relief would be granted due to *Louisiana v. Becerra*.[111] That was wrong. First, *Becerra* did not involve the APA. Second, *Becerra* does not suggest nationwide injunctions are "disfavored" in the Fifth Circuit. Indeed, this Court noted that it has previously allowed nationwide injunctions and emphasized that the scope of an injunction will depend on the circumstances.[112]  And it noted that it had granted just such an injunction in a 2015 APA case, *Texas v. United States*.[113]

This Court could not have been more clear in reaffirming—just last year— that vacatur is the normal and expected remedy in an APA suit like that brought by Plaintiffs:

> **The default rule is that vacatur is the appropriate remedy [under the APA].** *See, e.g., Texas v. Biden*, 20 F.4th at 1000 ("[B]y default, remand with vacatur is the appropriate remedy."); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). The

---

[109] *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1916 & n. 7 (2020) (affirming district court's vacatur of rescission of Deferred Action for Childhood Arrivals program).

[110] *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).

[111] 20 F.4th 260, 263-64 (5th Cir. 2021).

[112] *Id.*

[113] *Id.* at 263 (citing *Texas*, 809 F.3d 134 (5th Cir. 2014)).

> Department makes no developed argument that the district court abused
> its discretion in following the default rule . . . . We therefore uphold the
> court's vacatur.[114]

In APA cases, both the Supreme Court and this Court have been clear that complete

vacatur of the unlawful rule is the "default."[115] The NRA had no way of anticipating

otherwise.

The district court's timeliness analysis has been rejected in circumstances

nearly identical to these. In *VanDerStok v. Garland*, the intervenor sought to

intervene after a preliminary injunction ruling revealed the intervenor would not be

protected the injunction.[116] ATF argued the timeliness clock started five months

before intervention was requested "when the Final Rule was promulgated, or at least

when [the putative intervenor] learned of but declined to join other lawsuits

challenging ATF's rule."[117] *VanDerStok* rejected the argument because "length of

time is measured from when the intervenor learned of his interest ***in the particular***

***action in which he seeks to intervene***. And [the intervenor] filed its motion to

intervene just over a month after Plaintiffs' original complaint, within a month of

---

[114] *Data Mktg. P'ship,*, 45 F.4th at 859–60.

[115] *Id.*; *see also Texas*, 809 F.3d at 178-88.

[116] Civil Action No. 4:22-CV-691-O (N.D. Tex. 2022), at Doc. 98 & Doc. 137 (allowing multiple interventions by parties seeking to expand preliminary injunction); *VanDerStok v. Garland*, No. 4:22-CV-691-O. 2022 WL 19023858 (N.D. Tex. Dec. 19, 2022) (granting intervention to protect members from enforcement of rule based on preliminary injunctive relief previously granted to existing parties).

[117] Civil Action No. 4:22-CV-691-O (N.D. Tex. Oct. 18, 2022) (slip op.) at p.5.

the Final Rule's effective date, and within twenty days of learning that it would not be covered by the Court's preliminary injunction . . . ."[118]

The timeline here is essentially the same—the NRA filed its motion within months of Plaintiffs filing the relevant complaint, within five months of the Final Rule's effective date (and within **two days** of the actual enforcement date), and within a week of learning that its members would not be protected by the preliminary injunction granted to SAF and its members.

In holding that the NRA's intervention was untimely, the district court "lost sight of th[e] fundamental principle" that, in measuring timeliness, the court "must weigh whether any delay in seeking intervention **unfairly disadvantaged the original parties**."[119] This Court has emphasized that "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene."[120] And it has underscored that "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner ."[121]

---

[118] *Id.*; *see also Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (intervention motion timely when filed within two weeks of learning interests were not adequately protected).

[119] *Roane*, 741 F.3d at 151 (emphasis added).

[120] *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970).

[121] *Sierra Club*, 18 F.3d at 1205.

But the district court wielded timeliness in just this fashion. It found the NRA's motion untimely *even while* acknowledging that "the case is still in its early stages," and while citing no prejudice whatsoever resulting from any delay in the NRA's intervention. [122]

Instead, the district court focused on the NRA's supposed delay in seeking intervention "since the inception of the suit."[123] But this is "not in itself the determinative test."[124] The Fifth Circuit has held clearly that "the time that the would-be intervenor first became aware of the pendency of the case *is not relevant to the issue of whether his application was timely*."[125] In finding the NRA's intervention untimely, the district court's reasoning amounted to, "[b]ecause [the NRA] could have intervened earlier, [it] should have intervened earlier."[126] But such shallow reasoning is "an abuse of the court's discretion."[127] "In focusing on the amount of time that had elapsed between the filing of the lawsuit and [the NRA]'s motion to intervene, the district court overlooked what the relevant caselaw says is the most important consideration: the fact that granting [the NRA] intervention was highly unlikely to disadvantage the existing parties."[128] Further, by evaluating

---

[122] ROA.1017.
[123] *Roane*, 741 F.3d at 151.
[124] *Id.*
[125] *Stallworth*, 558 F.2d at 265 (emphasis added).
[126] *Roane*, 741 F.3d at 152.
[127] *Id.*
[128] *Id.*

timeliness in a vacuum, the district court ignored that, in evaluating timeliness "the status of the litigation at the time of the request for intervention" is "highly relevant."[129]

Here, the underlying case is "still in its early stages."[130] No answer has been filed and no discovery undertaken. More importantly, no party would suffer any prejudice if the NRA was allowed to intervene.[131] The NRA's intervention would not delay the proceedings, nor would it affect any party's legal rights. "Intervention should generally be allowed where," as here, "'no one would be hurt and greater justice could be attained.'"[132]

Moreover, mere inconvenience to the existing parties is not enough to show prejudice.[133] Indeed, the "potential prejudice caused by the intervention itself[,]" is "irrelevant, because it would have occurred regardless of whether the intervention was timely. The only proper concern is how much ***more*** prejudice would result

---

[129] *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992).

[130] ROA.1016-17.

[131] *See* BLACK'S LAW DICTIONARY 555 (3d Pocket ed. 2006) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims").

[132] *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (quoting *Sierra Club*, 18 F.3d at 1205); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) ("Federal courts should allow intervention where no one would be hurt and greater justice could be attained.") (internal quotations omitted).

[133] *See Sierra Club*, 18 F.3d at 1205 ("prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation.").

from" the intervention.[134] "What Defendants have identified is only the resulting inconvenience associated with [the NRA's] intervention. But mere inconvenience is not prejudice."[135] "This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed."[136] And, again like *VanDerStok*, "this litigation has not yet reached a critical stage. Indeed, the [District] Court has not even issued a scheduling order in the case."[137]

Even if post-intervention prejudice were relevant, allowing the NRA to litigate substantially similar claims to Plaintiffs would not prejudice any party. Below, the Government complained that "the court will be compelled to address the NRA's standing, entitlement to relief, and legal claims."[138] But it failed to explain how questions regarding the NRA's standing, legal claims and entitlement to relief are more "complicated" than those of the existing plaintiffs. Nor did it explain how it is prejudiced by having to contest these matters under the aegis of this lawsuit, as opposed to a separate lawsuit that the NRA would be forced to file. Again, "[p]rejudice must be measured by the delay in seeking intervention, not the

---

[134] *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009); *see also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992) (appropriate inquiry is prejudice arising from delay in seeking intervention, not prejudice to existing parties if intervention is allowed) (emphasis added).

[135] Civil Action No. 4:22-CV-691-O, at p. 6 (N.D. Tex. Oct. 18, 2022) (slip op.).

[136] *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996).

[137] *Id.*

[138] Doc. 83 at 7.

inconvenience to the existing parties of allowing the intervener to participate in the litigation."[139]

Contrary to the lack of prejudice to the existing parties, the NRA and its members will be severely prejudiced if the NRA is not allowed to intervene. The NRA represents millions of members throughout the nation, many of whom, face the threat of their constitutional rights being infringed and the possibility of felony prosecution as a result of the Final Rule.[140] The NRA's dues-paying members rely on it to protect their gun rights through, *inter alia*, filing lawsuits and obtaining judicial relief to protect those rights.[141] Thus, the NRA's members can only be protected by the NRA in this proceeding. That is evidenced by the narrow injunctive relief in the Clarified Injunction Order, which prohibits application of the Final Rule only to the Plaintiffs and the SAF's members—not the NRA's members.

The NRA will also suffer institutional injury if SAF's members are granted preliminary relief, but the NRA and its members are denied the exact same relief.[142] The NRA's members are similarly situated to those of SAF except with regard to which advocacy group they have decided to join. Just like SAF's members, the NRA's members rely on it to protect their gun rights by filing lawsuits and obtaining

---

[139] *Sierra Club*, 18 F.3d at 1206.
[140] ROA.662 ¶5, ROA.677 ¶78, ROA.800 ¶¶12-13, ROA.805 ¶¶5-8.
[141] ROA.664 ¶13, ROA.798 ¶5.
[142] ROA.801-02 ¶20.

judicial relief to protect those rights.[143] The NRA is harmed as an organization when it, and its members, are denied the exact same relief granted to members of SAF. Thus, the NRA is not asserting a mere ideological interest in the litigation; rather, the NRA asserts "an injury both concrete and specific to the work in which [it is] engaged"—that of protecting its members' individual gun rights.[144] Indeed, SAF has used the district court's denial of the NRA's intervention in order to recruit new members.[145]

The district court suggested the NRA's burden in having to file an entirely separate lawsuit is somehow insubstantial.[146] But the NRA's "decision to forego intervention in another case, or to bring an independent case, is irrelevant to the issue of timeliness *in this case*."[147]

Even if the timeliness of the NRA's intervention was judged based on "mere lapse of time"— the wrong way to evaluate timeliness—the NRA's intervention was

---

[143] ROA.664 ¶13; Cotton Decl., ROA.798 ¶5.

[144] *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("concrete and demonstrable injury to the organization's activities" established where the petitioners' practice of steering prospective buyers to neighborhoods based on their racial character "perceptibly impaired [fair housing organization's] ability to provide counseling and referral services for low-and-moderate-income homeseekers"; in such circumstances, "there can be no question that the organization has suffered injury in fact").

[145] Second Amendment Foundation, "SAF Invites NRA Members to Join After Judge Denies Intervention" (June 30, 2023), *available at* https://www.saf.org/saf-invites-nra-members-to-join-after-judge-denies-intervention/.

[146] *Id.*

[147] *VanDerStok*, Civil Action No. 4:22-CV-691-O, at p.6 (N.D. Tex. Oct. 18, 2022) (slip op.) (emphasis in original).

timely. The Final Rule was published on January 31, 2023. The NRA sought to intervene in Plaintiffs' suit challenging the Final Rule about four months later. Before the District Court's ruling, no case has ever found a lapse of four months in challenging a complicated rulemaking to render intervention untimely.[148] Indeed, several precedential Fifth Circuit decisions approve intervention where there was a delay of up to a year.[149] "[T]he passing of four months before [the NRA] filed [its] motion, during which apparently no progress was made in the litigation, does not constitute the sort of undue delay or reflect the sort of unexcused dilatoriness that would disqualify [the NRA] from intervention—especially in the absence of any showing of prejudice to [the other parties] resulting from that four-month delay."[150]

The district court's erroneous standard for timeliness would encourage parties to file protective motions to intervene in **any** case seeking nationwide injunctive

---

[148] *Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 790 (C.D. Cal. 2015) ("A four month delay is not particularly long"); *In re Stingfree Techs. Co.*, 427 B.R. 337, 348 (E.D. Pa. 2010) (four month delay "not unreasonable in light of the procedural posture of the case."); *E. Paralyzed Veterans Ass'n of Pennsylvania, Inc. v. Se. Pennsylvania Transp. Auth.*, No. CIV.A. 85-4460, 1986 WL 4533, at *2 (E.D. Pa. Apr. 16, 1986) (same).

[149] *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019) (intervention timely if it occurs "within a year"); *ADT, LLC v. Cap Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (eight-month delay reasonable); *see also Sierra Club v. Fed. Emergency Mgmt. Agency*, No. CIV. A. H-07-0608, 2008 WL 2414333, at *5 (S.D. Tex. June 11, 2008) (eleven month delay "from the time it reasonably should have known of its interest" was timely); *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *4 (N.D. Tex. Nov. 3, 2022) (five-month delay "is not dispositive" because timeliness turns on facts of case).

[150] *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 788 (6th Cir. 2004).

relief to guard against the possibility that a court might issue a narrower injunction limited to the named plaintiffs.[151]

As this Court has noted in rejecting the notion that timeliness should be measured from the date suit was filed:

> [A] rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention. It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high. Often the protective step of seeking intervention will later prove to have been unnecessary, and the result will be needless prejudice to the existing parties and the would-be intervenor if his motion is granted, and purposeless appeals if his motion is denied. In either event, scarce judicial resources would be squandered, and the litigation costs of the parties would be increased. Such a rule would also mean that many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on. These effects would be inconsistent with two important purposes of Rule 24: to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation. **Therefore, the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely.**[152]

### 4.   <u>The NRA Has An Interest Relating to the Subject of This Action</u>

---

[151] In the class action context, the Supreme Court has warned against creating a similar inducement via "a rule [that] would induce putative class members to file protective motions to intervene to guard against the possibility that the named representatives might not appeal from the adverse class determination." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 n.15 (1977).

[152] *Stallworth*, 558 F.2d at 264–65.

To establish its right to intervene under Rule 24(a), a party must demonstrate that it possesses an interest "***relating to*** the property or transaction that is the subject of the action."[153] "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process . . . ."[154]

Here, it is not disputed that the NRA has an interest in protecting its members from the unconstitutional overreach embodied by the Final Rule. Millions of law-abiding NRA members face the possibility of draconian penalties and irreparable harm without an order enjoining Defendants from enforcing the Final Rule against them.[155] Several courts have already recognized that there is the potential for irreparable harm to gun owners arising from the application of the Final Rule.[156] Indeed, courts have held that the NRA has a protectable interest relating to its interest in preventing the imposition of firearms restrictions on its members.[157] Moreover, intervention for the purpose of expanding injunctive relief to the intervening party

---

[153] Fed. R. Civ. P. 24(a)(2) (emphasis added).

[154] *Glickman*, 256 F.3d at 379 (quoting *Sierra Club*, 18 F.3d at 1207).

[155] *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 937 (N.D. Tex. 2019) (intervention appropriate where putative intervenors "seek to intervene based on their associational standing to assert the concrete, particularized, and legally protectable' interests of their individual members."), ROA.664 ¶5, ROA.677 ¶78, ROA.800 ¶¶12-13, ROA.805 ¶¶5-8.

[156] *See* S.D. Tex. Order Doc. 51 at p.2, n.2 (noting "the Fifth Circuit necessarily found *sub silentio* that the four elements for a preliminary injunction had been satisfied as to the plaintiffs in that case."), ROA.572-73, ROA.616-17.

[157] *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 266 F.R.D. 369, 373 (D. Ariz. 2010).

and its members is supported by this Court's precedent.[158] Accordingly, because the NRA's members include gun owners that face irreparable harm arising from the Final Rule, the NRA's intervention satisfies the second element of the Rule 24(a) analysis. The District Court below did not hold otherwise.

### 5. Absent Intervention, the NRA's Ability to Defend its Members' Interests Will Be Impaired

Demonstrating impairment of the interests of a third party seeking to intervene is a minimal burden.[159] "[T]he inquiry . . . is a flexible one, which focuses on the particular facts and circumstances surrounding each application; that intervention of right must be measured by a practical rather than technical yardstick."[160] "[T]he movant must demonstrate that disposition of [the] action *may*, as a practical [and not merely 'theoretical'] matter, impair or impede the movants ability to protect that interest. The impairment requirement ***does not*** demand that the movant be bound by a possible future judgment."[161] This Court has held that "an intervenor's interest is

---

[158] *See Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99, 103-06 (5th Cir. 1989) (permitting intervention as of right and permissively and expanding scope of injunctive relief); *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *5 (N.D. Tex. Nov. 3, 2022) (permitting intervention for purpose of expanding previously issued injunctive relief by granting injunctive relief to intervenor and its customers).

[159] *Brumfield*, 749 F.3d at 344, n.2 (citing *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) ("To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*.") (emphasis in original)); *see also Barnes v. Security Life of Denver Ins.*, 945 F.3d 1112, 1123 (10th Cir. 2019).

[160] *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) (internal quotation marks omitted).

[161] *Id.* (quoting *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014)) (emphasis in original).

impaired by the *stare decisis* effect of the district court's judgment."[162]

Here, if the NRA is not allowed to intervene in this action, its members may not be protected from enforcement of the Final Rule against them in a timely manner. Specifically, its members face the prospect of immediate harm from enforcement of the Final Rule, including being forced to modify their firearms, destroy them, register them, or surrender them to the federal government under threat of felony criminal prosecution.[163] They will face this threat potentially for many years, as this case works its way through the judicial system.

Indeed, the NRA has been forced to add to the already numerous challenges to the Final Rule by filing another action at additional expense.[164] The ability to intervene under Rule 24 is intended to prevent the exact multiplicity of overlapping lawsuits to which the NRA would be forced to contribute if it is not permitted to intervene here. As this Court has noted, the potential need to file separate litigation if intervention is denied "is a decisive argument in favor of finding [the NRA's] interest to be impaired."[165]

---

[162] *Espy*, 18 F.3d at 1207.
[163] ROA.662 ¶5, ROA.668 ¶30, ROA.800, ¶12 ROA.801, ROA.800 ¶19, ROA.805 ¶¶5-8.
[164] ROA.803 ¶24.
[165] *CNA Metals*, 919 F.3d at 867.

Accordingly, the NRA's ability to protect the interests of its members will be impaired significantly if the intervention is denied. Indeed, the District Court below did not hold to the contrary.

### 6. Neither the Interests of the NRA Nor Its Members Are Adequately Represented by Plaintiffs

Just last year in *Berger*, the Supreme Court described Rule 24's adequacy prong "as presenting proposed intervenors with only a minimal challenge."[166] "The potential intervener need only show that the representation ***may be*** inadequate."[167] "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case."[168] That burden is met where the potential intervenors "specified the particular ways in which their interests diverged from the party's and then identified the particular way in which these divergent interests have impacted the litigation."[169] Moreover, the Supreme Court has clarified that any "presumption of adequate representation . . . . ***applies only when interests overlap fully***."[170]

---

[166] *Berger*, 142 S. Ct. at 2203.

[167] *Glickman,* 256 F.3d at 380 (quoting *Sierra Club*, 18 F.3d at 1207) (emphasis in original).

[168] *Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198, 204 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015)). As *Entergy* noted, *Texas* "was the first time [the Fifth Circuit] clearly explained the meaning of 'adversity of interest.'" *Id*. at n.4.

[169] *Id*.

[170] *Berger*, 142 S. Ct. at 2204.

34

The district court held that the NRA's interests are adequately protected because the NRA and Plaintiffs seek the same "ultimate objective"—"invalidate the [Final] Rule."[171] It thus applied a presumption of adequate representation. But the district court erred in applying this presumption while also acknowledging that Plaintiffs were not adequately representing the NRA's interests.

By the district court's own admission, the NRA's interests do not "overlap fully" with SAF's:

> In the Amended Complaint, Plaintiffs explicitly "request[ed] a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule against Plaintiffs." And Plaintiffs' subsequent Motion for Preliminary Injunction, filed in early March, likewise sought "a preliminary injunction enjoining the Agencies from enforcing the 'Arm Brace Rule' . . . against the Plaintiffs and postponing the Arm Brace Rule until this litigation's conclusion." So, the NRA was aware of the Rule almost two years ago. And nothing in this case suggested that Plaintiffs were seeking a nationwide preliminary injunction. **Rather, Plaintiffs expressly limited the requested preliminary relief to the named Plaintiffs.**[172]

Thus, the district court's own words show that the interests of the NRA and its members are not adequately represented by Plaintiffs. Plaintiffs sought, and obtained, an injunction against the Final Rule on behalf of themselves and SAF's members—not the NRA's members.[173] Under *Berger*, the district court erred in

---

[171] ROA.1019.

[172] *Id*. at 6 (citations omitted, emphasis added).

[173] *Id*.

applying a presumption of adequate representation.[174] That is because—as the district court itself emphasized—SAF's interests do not "overlap fully" with the NRA's.[175] Indeed, according to the district court, they barely overlap at all. Plaintiffs' inability to obtain preliminary injunctive relief on behalf of the NRA and its members—and their lack of desire to obtain relief—demonstrates an adversity of interest and conflict between the NRA and Plaintiffs that is more than sufficient to justify the NRA's intervention.[176]

Indeed, this Court has found divergent interests sufficient to justify intervention as of right where, in the absence of intervention, the result would be a "significantly delayed and likely narrower ruling."[177] That is so in this case: in the absence of intervention, any relief that the NRA's members would obtain would be, at a minimum, "significantly delayed" due to their inability to obtain preliminary relief.[178] Further, any final relief would be "likely narrower" because there is a serious risk that Plaintiffs would only obtain relief that would benefit their particular members.

---

[174] *Compare Berger*, 142 S. Ct. at 2204 (presumption of adequate representation applies only where interests "overlap fully") with ROA.1019 (noting that the Plaintiffs purposefully did not seek relief that would benefit the NRA and its members).

[175] *Berger*, 142 S. Ct. at 2204.

[176] *See Meridian Homes Corp v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir. 1982) ("where it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate . . . that some conflict exists").

[177] *Entergy*, 817 F.3d at 205.

[178] *Id.*

SAF, a group that recruits its own members and engages in its own fundraising, does not have the same incentive to protect the interests of the NRA's members that the NRA does. Indeed, the district court has found as much in emphasizing that Plaintiffs made no attempt to protect the NRA's members in their Amended Complaint and Motion for Preliminary Injunction, which sought injunctive relief as to only themselves.[179] Further, in obtaining injunctive relief, SAF cannot assert the same irreparable harm on behalf of its members that the NRA can on behalf of its members—nor does it have an incentive to make a particularized showing of irreparable harm on behalf of the NRA and its members.[180] "[The NRA's] status as a marketplace competitor to [SAF]—[which] is already wholly protected by the current preliminary injunction and without economic incentive to advocate expanded relief for its competitor—is a practical nuance sufficient to overcome the presumption."[181]

---

[179] ROA.1015.

[180] *Entergy*, 817 F.3d at 205-206 (the fact that the limits on the representative party's ability to advocate for the intervenor arise from a "legal require[ment] . . . does not mean that these interests cannot impact the case; nor does this fact mean that these interests cannot provide a basis for intervention when [the intervenor's] interest diverge from these interests.") Here, the divergence in interests between SAF and NRA has already impacted the case: because the SAF did not have the same interest in making a particularized showing of irreparable harm on behalf of the NRA that the NRA did, the preliminary injunction entered to date did not include the NRA or its members within its scope—subjecting the NRA's members to legally-cognizable harms that are irreparable in the absence of immediate injunctive relief.

[181] *VanDerStok*, Civil Action No. 4:22-CV-691-O, at p.9 (N.D. Tex. Oct. 18, 2022) (slip op.).

So too in this case, SAF is a "marketplace competitor" to the NRA. On June 30, the same day the district court denied the NRA's motion to intervene, SAF issued a Press Release titled, "SAF Invites NRA Members to Join After Judge Denies Intervention."[182] In its Press Release, SAF's founder and Executive Vice President stated that "the order denying NRA's intervention does not mean NRA members are out of luck. . . They can join SAF and be covered under the judge's ruling issued last month."[183] SAF's Executive Director added, "We will definitely welcome any NRA members wanting to join SAF."[184]

Thus, the NRA stands in exactly the same posture to the SAF as the gun manufacturers at issue in *VanDerStok*. SAF is "is already wholly protected by the current preliminary injunction and without economic incentive to advocate expanded relief for its competitor."[185] SAF has not sought to expand the existing injunction to the NRA's members—and it has an economic incentive to not do so. Thus, the NRA has interests that diverge sufficiently from SAF's (and the other Plaintiffs) to overcome any presumption of adequate representation. "[T]he current scope of the preliminary injunction, which affords protective relief to only [SAF and

---

[182] Second Amendment Foundation, "SAF Invites NRA Members to Join After Judge Denies Intervention" (June 30, 2023), *available at* https://www.saf.org/saf-invites-nra-members-to-join-after-judge-denies-intervention/.
[183] *Id.*
[184] *Id.*
[185] *VanDerStok*, Civil Action No. 4:22-CV-691-O, at p. 9 (N.D. Tex. Oct. 18, 2022) (slip op.).

its members], and Defendants' continued opposition to expansion of relief to [the NRA's members . . . satisfies this minimal threshold" of showing potentially inadequate representation, especially because "any doubts about whether this element is satisfied are resolved in favor of intervention."[186]

The District Court analogized SAF's inability to obtain any relief benefitting the NRA, and lack of incentive to obtain such relief, as nothing more than "the typical . . . disadvantages of being a non-party."[187] But that simply is not true. The complete inability to gain injunctive relief is not a mere incident to not being a named plaintiff in a suit, but a fact showing that a putative intervenor is not adequately represented by the existing parties. The District Court implied that the ability to obtain a preliminary injunction is reserved only to the original parties to a suit.[188] But intervention for the purpose of expanding injunctive relief to the intervening party and its members is supported by this Court's precedent.[189] Rule 24 does not require that a party seeking intervention claim some sort of extraordinary

---

[186] *VanDerStok*, Civil Action No. 4:22-CV-691-O, at p. 9 (N.D. Tex. Oct. 18, 2022) (slip op.).
[187] *Id.*
[188] ROA.1019.
[189] *See Trans World Airlines, Inc.*, 712 F. Supp. at 103-06 (permitting intervention as of right and permissively and expanding scope of injunctive relief); *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *5 (N.D. Tex. Nov. 3, 2022) (permitting intervention for purpose of expanding previously issued injunctive relief by granting injunctive relief to intervenor and its customers).

disadvantage, only that its representation by the parties currently in the case may be inadequate. The NRA clearly carried that burden.

The district court went far afield in thinking that it would somehow be setting a precedent allowing any "non-party" to intervene in any case.[190] But it did not explain why, and it did not connect its fear to any purpose of the intervention rules. "Interference with orderly judicial processes has nothing to do with timeliness and is not a relevant factor when analyzing intervention as of right."[191] Further, the district court confused the prospect of potential inconvenience in its own case management duties caused by allowing the intervention—which is irrelevant—with prejudice *to the parties*. "Inconvenience for the district court is not the same as prejudice to parties."[192] Thus, "courts should ignore the likelihood that intervention may interfere with orderly judicial processes."[193]

*Berger* is instructive. In *Berger*, the Supreme Court addressed similar concerns to those expressed by the district court—and held that unfounded "floodgates" fears are not sufficient deny intervention. In *Berger*, state legislative leaders sought to join the defense of the state's voter identification law as intervenors—even though the state's attorney general was already defending the

---

[190] ROA.1019-20.
[191] *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249 (5th Cir. 2009).
[192] *Id.*
[193] *Glickman*, 256 F.3d at 378.

law.[194] Like the district court here, the lower court in *Berger* applied a presumption of adequate representation to deny intervention, because the state legislative leaders had the same ultimate objective as the attorney general—defend the voter identification law.[195]

But the Supreme Court reversed. In so doing, it dismissed "worries that allowing the legislative leaders to intervene could make trial management impossible."[196] "In some other case, a proliferation of motions to intervene may be a cause for caution. . . . But that case is not this case."[197] "In matters ranging from civil-rights actions to suits testing the constitutionality of state or federal legislation, federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions."[198] "Whatever additional burdens adding the legislative leaders to this case may pose, those burdens fall well within the bounds of everyday case management."[199]

So too in this case, allowing the largest and most-experienced gun rights advocacy group in the country, with over four million members,[200] to join a suit testing the legality of a major rulemaking does not present anything approaching the

---

[194] *Berger*, 142 S. Ct. at 2198-99.
[195] *Id.* at 2199, *compare* ROA.1019.
[196] *Id.* at 2205.
[197] *Id.*
[198] *Id.* at 2206.
[199] *Id.*
[200] ROA.663-64 ¶¶9, 12.

sort of "floodgates" concerns sufficient to deny intervention. Like *Berger*, this a suit where any burdens presented by an additional party "fall well within the bounds of everyday case management."[201] Like the lower court in *Berger*, the district court erred in seeking to use Rule 24(a)'s adequacy prong to avoid routine case management burdens.

The district court analogized the NRA to a party that was seeking to intervene just to obtain access to discovery,[202] but that is not true either—the NRA is seeking to intervene to obtain concrete relief for its members, not just to peer over the shoulder of Plaintiffs.

## B. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PERMISSIVE INTERVENTION

### 1. The Court Reviews Denial of Permissive Intervention for Abuse of Discretion

This Court reviews the District Court's denial of permissive intervention for "clear abuse of discretion."[203] However, "a reversal for 'abuse of discretion' does not imply that the district judge has been guilty of some egregious blunder."[204] It simply mean that "the reasons militating in favor of granting the motion to intervene substantially outweighed the reasons militating against it."[205]

---

[201] *Berger*, 142 S. Ct. at 2206.
[202] ROA.1020.
[203] *Edwards*, 78 F.3d at 995.
[204] *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970).
[205] *Id.*

## 2.     The NRA Clearly Satisfies the Standards for Permissive Intervention.

Rule 24(b) of the Federal Rules of Civil Procedure provides that: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" and where "the intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights."[206]   Permissive intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties."[207] Put another way, "[d]etermining whether an individual should be permitted to intervene is a two-stage process. First, the district court must decide whether the applicant's claim or defense and the main action have a question of law or fact in common. If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed."[208]

The NRA satisfies each prong required for permissive intervention: (1) the NRA timely filed the Motion; and (2) the NRA has a claim that shares common questions of law and fact with the existing case; and (3) the NRA's intervention will

---

[206] Fed. R. Civ. P. 24(b)(1)(B)-(C).
[207] *Clements*, 884 F.2d at 189 n.2.
[208] *Stallworth*, 558 F.2d at 264-66.

43

not unduly delay or prejudice the adjudication of the rights of the original parties to the case. The District Court clearly abused its discretion in holding otherwise.

### 3. The NRA Timely Filed its Motion

The NRA's intervention was timely under this Court's four-factor analysis.[209] Although the timeliness analysis is "more lenient" for intervention as of right than it is for permissive intervention, the NRA acted immediately upon learning that its members interests might be in peril.[210] Thus, the NRA timely sought permissive intervention, because "the more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause."[211] Here, neither Defendants nor the district court pointed to any prejudice whatsoever resulting from any alleged delay. Further, courts routinely approve intervention where the parties have waited even over a year to intervene.[212] The NRA's claims "invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit," and thus the Government "will not be prejudiced" by the NRA's intervention.[213]

### 4. The NRA's Claims Share Common Questions of Law and Fact with the Existing Case Below

---

[209] *See supra* pp.18-30.

[210] Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n, 834 F.3d 562, 565-66 n.1 (5th Cir. 2016).

[211] *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970).

[212] *Id.* at 1125 (intervention after the "passage of a year after [the Government] knew of the suit," and after the close of discovery, was nonetheless timely).

[213] *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring).

The NRA represents millions of members throughout the nation, many of whom face the threat of their constitutional rights being infringed and the possibility of felony prosecution as a result of the Final Rule.[214] The NRA's members, like the SAF members that the District Court already held are entitled to protection, are representative of those affected by the Final Rule and face the same irreparable harm.[215] Moreover, the Complaint in Intervention asserts many of the same claims as the Complaint based on similar factual allegations regarding the infringement on the NRA's members' constitutional rights by the Final Rule.[216] Because the NRA's members face the same irreparable harm as SAF's members arising from the Final Rule's infringement on their constitutional rights, there are inarguably common questions of law and fact between the Complaint and the Complaint in Intervention.[217]

### 5.     The NRA's Intervention Will Not Prejudice the Original Parties.

---

[214] ROA.662 ¶5, ROA.668 ¶30, ROA.800 ¶12, ROA. 801 ¶19, ROA.805 ¶¶5-8.

[215] ROA.800 ¶12, ROA. 801 ¶19, ROA.805 ¶¶5-8.

[216] ROA.680-692 ¶¶94-166.

[217] *See Trans World Airlines, Inc.*, 712 F. Supp. at 103-06 (5th Cir. 1989) (permitting intervention as of right and permissively and expanding scope of injunctive relief); *VanDerStok*, 2022 WL 16680915, at *5 (permitting intervention for purpose of expanding previously issued injunctive relief by granting injunctive relief to intervenor and its customers).

As the District Court held, the case below is "still in its early stages."[218] No answer has been filed and no discovery has been undertaken. No party would suffer any prejudice from the NRA's intervention.[219] "In matters ranging from civil-rights actions to suits testing the constitutionality of state or federal legislation, federal courts routinely handle cases involving multiple [parties] sometimes represented by different attorneys taking different positions."[220] Any burdens created by a multiplicity of parties participating in the same suit "fall well within the bounds of everyday case management" and are not a grounds for denying intervention.[221] Thus, as is the case here, "[i]ntervention should generally be allowed where 'no one would be hurt and greater justice could be attained.'"[222]

The district court expressed fears about "an avalanche of motions to intervene."[223] But such concerns have no application to the intervention of the nation's largest gun rights advocacy group, with over four million members—an intervention that would ***avoid*** a circumstance where its members must file individual suits to protect their rights.[224] Indeed, the district court's "floodgates" concern has

---

[218] ROA.1016-17.
[219] *See* BLACK'S LAW DICTIONARY 555 (3d Pocket ed. 2006) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims").
[220] *Berger*, 142 S. Ct. at 2206.
[221] *Id.*
[222] *Ross*, 426 F.3d at 753 (5th Cir. 2005) (quoting *Sierra Club*, 18 F.3d at 1205); *see also Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).
[223] ROA.1021.
[224] ROA.663 ¶ 9.

no application where the alternative is a flood of separate lawsuits, as opposed to interventions.

The sole case cited by the district court as support for its "floodgates" argument—*SEC v. Bear, Stearns & Co. Inc.*[225]—underscores that this argument does not apply where the alternative to potential interventions is potential duplicative, separate lawsuits. In *Bear Stearns*, two individual investors sought to intervene in a suit brought by the SEC in order "to offer the Court a general view into the 'needs of investors'" as the court considered proposed consent decrees.[226] They did not seek to protect any concrete legal right, and instead sought to have the court shape the consent decrees in such a way as to bolster claims that they planned to bring in arbitration.[227] That is a far cry from the NRA's intervention in this case.

Further, the court's reasoning in *Bear Stearns* emphasized that the SEC "aggressively representing the interests of the investing public in the underlying actions."[228] Plaintiffs in this case, by contrast, are not representing the NRA or its members at all—as the district court acknowledged elsewhere in its opinion. Rather than representing the NRA "aggressively," SAF is using the district court's order

---

[225] No. 03 CIV.2937 WHP, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003).
[226] *Id*.
[227] *Id*. at *6.
[228] *Id*. at *5.

denying intervention to recruit new members,[229] and has taken no subsequent action to protect the interests of the NRA's members.

Moreover, the district court's timeliness rule would require just the "avalanche of motions to intervene" that it sought to avoid. That is because it would require the NRA to intervene in any gun-rights suit brought by another advocacy group as soon as it is filed.

Further, any flood of lawsuits—or intervention motions—by gun-owners seeking to protect their rights under the APA is a consequence of the fact that (1) vacatur of unlawful rules is the "default rule" under that law,[230] (2) alleged deprivations of constitutional or procedural rights are considered irreparable.[231] The idea that a rule might be "set aside . . . as to some parties and not others" is contrary to the notion of vacatur under the APA and basic rules of fairness.[232] Put simply, it offends basic notions of justice that an individual's legal rights should turn on whether he is a member of the NRA and SAF.

---

[229] Second Amendment Foundation, "SAF Invites NRA Members to Join After Judge Denies Intervention" (June 30, 2023), *available at* https://www.saf.org/saf-invites-nra-members-to-join-after-judge-denies-intervention/.

[230] *Data Mktg. P'ship,* 45 F.4th at, 859–60 (5th Cir. 2022).

[231] *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Polymer80, Inc. v. Garland*, No. 4:23-CV-00029-O, 2023 WL 3605430, at *10 (N.D. Tex. Mar. 19, 2023); *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-CV-01934, 2022 WL 2960031, at *13 (W.D. La. July 26, 2022)*; Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 294–97 (5th Cir. 2012).

[232] Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. at 1122 ("A court might set aside the rule as to some provisions and not others, but it generally does not set aside the rule (or its provisions) as to some parties and not others; vacatur leaves no rule (or provision) in place to enforce against anyone.").

### 6.    <u>The NRA is Not Adequately Represented by Plaintiffs</u>

As the district court made plain in its decision below,[233] the NRA and its members are not adequately represented by Plaintiffs and ***cannot*** be adequately represented by Plaintiffs under the current law of the case. Thus, permissive intervention is necessary to protect the NRA's members.

## VI.    CONCLUSION

The district court's decision below makes it more expensive for parties to vindicate their legal rights by forcing putative intervenors to file separate lawsuits. It is thus contrary to the basic purpose underlying the Federal Rules of Civil Procedure—"to secure the just, speedy, and inexpensive determination of every action and proceeding."[234] Instead, the district court's decision furthers the unnecessarily protracted and expensive determination of suits seeking to vindicate gun owners' legal rights, incentivizing premature attempts to intervene and necessitating a barrage of separate lawsuits when a district court enjoins a law or rule as the named plaintiffs in a suit but not others similarly-situated.

The Court should reverse the district court's Memorandum Opinion and Order denying the NRA's motion to intervene and hold that the NRA be allowed to intervene under Federal Rule of Civil Procedure 24.

---

[233] ROA.1015.
[234] Fed. R. Civ. P. 1.

Dated: July 24, 2023

By: /s/ Noah Peters

WILLIAM A. BREWER III
MATTHEW H. DAVIS
NOAH PETERS
nbp@brewerattorneys.com
BREWER ATTORNEYS &
COUNSELORS
1717 Main Street, Suite 5900
Dallas, TX 75201
Telephone: (214) 653-4012

Counsel for Movant-Appellant

## VII. CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ Noah Peters
NOAH PETERS

## VIII. CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font. This brief also complies with the type-volume limitations, which limit principal briefs to 13,000 words. This brief contains 12,569 words.

/s/ Noah Peters

NOAH PETERS

52