No. 23-10707

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

SECOND AMENDMENT FOUNDATION
INCORPORATED, ET AL.,

Plaintiffs

THE NATIONAL RIFLE ASSOCIATION OF AMERICA,
INCORPORATED

Movant-Appellant

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; STEVEN
DETTELBACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE BUREAU OF
ALCOHOL TOBACCO FIREARMS AND EXPLOSIVES; UNITED STATES
DEPARTMENT OF JUSTICE; MERRICK GARLAND, U.S. ATTORNEY GENERAL,

Defendants-Appellees

———————————

On Appeal from the United States District Court
for the Northern District of Texas

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

ABBY C. WRIGHT
SEAN R. JANDA
STEVEN H. HAZEL
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellees are all governmental parties.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The Court granted the National Rifle Association of America's motion to expedite briefing and oral argument, but it has not yet set a date for argument. The government stands ready to present argument.

**TABLE OF CONTENTS**

**Page**

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

    A.    Statutory and Regulatory Background ........................................ 2

    B.    Procedural History ...................................................................... 3

SUMMARY OF ARGUMENT ..................................................................... 8

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT ............................................................................................. 11

The District Court Properly Denied the NRA's Motion to Intervene ......................... 11

    A.    The NRA Fails to Establish Multiple Prerequisites for Mandatory
        Intervention ................................................................................. 12

        1.    The NRA Fails to Establish that Its Asserted Interests Will
            Be Unprotected Absent Intervention ............................. 12

        2.    The NRA Fails to Establish that Its Motion to Intervene
            Was Timely ...................................................................... 19

    B.    The District Court Acted Well Within Its Discretion in Declining
        to Authorize Permissive Intervention ......................................... 27

CONCLUSION ......................................................................................... 30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Adam Joseph Res. v. CNA Metals Ltd.,*
  919 F.3d 856 (5th Cir. 2019) ................................................... 13, 16

*Blake v. Pallan,*
  554 F.2d 947 (9th Cir. 1977) ..................................................... 15

*Brumfield v. Dodd,*
  749 F.3d 339 (5th Cir. 2014) ..................................................... 18

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ................................................................... 19

*Ceres Gulf v. Cooper,*
  957 F.2d 1199 (5th Cir. 1992) ................................................... 16

*Chapman v. Manbeck,*
  931 F.2d 46 (Fed. Cir. 1991) ..................................................... 15

*Department of Homeland Sec. v. New York,*
  140 S. Ct. 599 (2020) ........................................................... 24, 26

*Deus v. Allstate Ins. Co.,*
  15 F.3d 506 (5th Cir. 1994) ............................................. 9, 13, 14

*Diaz v. Southern Drilling Corp.,*
  427 F.2d 1118 (5th Cir. 1970) ............................................. 13, 25

*Doe v. Duncanville Indep. Sch. Dist.,*
  994 F.2d 160 (5th Cir. 1993) ..................................................... 28

*Edwards v. City of Houston,*
  78 F.3d 983 (5th Cir. 2016) ......................................... 11, 18, 20

*Field v. Anadarko Petroleum Corp.,*
  35 F.4th 1013 (5th Cir. 2022) ..................................................... 1

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ............................................................... 19

*Haaland v. Brackeen,*
  143 S. Ct. 1609 (2023) ............................................................... 18

*Haspel & Davis Milling & Planting Co. v. Board of Levee Comm'rs of Orleans Levee Dist.*,
   493 F.3d 570 (5th Cir. 2007) ............................................................... 12

*Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*,
   88 F.3d 274 (5th Cir. 1996) ................................................................. 28

*International Tank Terminals, Ltd. v. M/V Acadia Forest*,
   579 F.2d 964 (5th Cir. 1978) ............................................................... 12

*Louisiana v. Becerra*,
   20 F.4th 260 (5th Cir. 2021) ............................................................... 24

*Mock v. Garland*,
   No. 23-10319, 2023 WL 4882763 (5th Cir. Aug. 1, 2023) ................... 5, 24

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
   732 F.2d 452 (5th Cir. 1984) ........................................................... 11, 28

*Rotstain v. Mendez*,
   986 F.3d 931 (5th Cir. 2021) ........................................... 10, 12, 20, 21, 28

*Securities & Exch. Comm'n v. Everest Mgmt. Corp.*,
   475 F.2d 1236 (2d Cir. 1972) ......................................................... 14, 15

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ....................................................... 16, 17, 25

*St. Bernard Par. v. LaFarge N. Am., Inc.*,
   914 F.3d 969 (5th Cir. 2019) ............................................................... 29

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ............................................................... 20

*United States v. City of Jackson*,
   519 F.2d 1147 (5th Cir. 1975) ............................................................. 13

*United States v. Jennings*,
   195 F.3d 795 (5th Cir. 1999) ................................................................. 2

*United States v. Texas*,
   143 S. Ct. 1964 (2023) ........................................................................ 23

*United States v. Texas. E. Transmission Corp.*,
   923 F.2d 410 (5th Cir. 1991) ............................................................... 16

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) ................................................................................2

*University of Tex. v. Camenish*,
  451 U.S. 390 (1981) ............................................................................ 19

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ............................................................ 11

**Statutes:**

Administrative Procedure Act (APA),
  5 U.S.C. § 701 *et seq.* ........................................................................ 4

National Firearms Act of 1934 (NFA):
  26 U.S.C. § 5801 *et seq.*.......................................................................2
    26 U.S.C. §§ 5801-5802 ................................................................. 2
    26 U.S.C. §§ 5811-5812 ................................................................. 2
    26 U.S.C. §§ 5821-5822 ................................................................. 2
    26 U.S.C. § 5841 ............................................................................. 2
    26 U.S.C. § 5845(a)(3) ................................................................ 2, 3
    26 U.S.C. § 5845(c) ..................................................................... 2, 3

**Rules:**

Fed. R. Civ. P. 1 ...................................................................................... 22

Fed. R. Civ. P. 24(a)(2) ...................................................... 1, 5, 8, 9, 11, 13, 17, 18

**Legislative Material:**

H.R. Rep. No. 83-1337 (1954) ............................................................... 2

**Other Authorities:**

Factoring Criteria for Firearms with Attached "Stabilizing Braces,"
  88 Fed. Reg. 6478 (Jan. 31, 2023) ............................................... 1, 3

Order, *Mock v. Garland*,
  No. 23-10319 (5th Cir. May 26, 2023) .......................................... 5

## STATEMENT OF JURISDICTION

The district court denied the National Rifle Association of America's (NRA) motion to intervene on June 30, 2023, *see* ROA.1021, and the NRA timely appealed, *see* ROA.1022. This Court has jurisdiction over the denial of the NRA's request for mandatory intervention "because it is an appealable final order." *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1017 (5th Cir. 2022). This Court has "provisional jurisdiction" to review the denial of the NRA's request for permissive intervention. *Id.* 1017 n.2 (quotation marks omitted). The Court therefore reviews the denial for "abuse of discretion," and if it finds "the district court did not abuse its discretion in denying the intervention," it "must dismiss the appeal for lack of jurisdiction." *Id.* (quotation marks omitted).

## STATEMENT OF THE ISSUES

This appeal involves a procedural issue arising in the context of a challenge to a rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *See* Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6478 (Jan. 31, 2023). The plaintiffs in this case are the Second Amendment Foundation and three individual and manufacturer plaintiffs. More than four months after ATF issued the rule—and just after the district court issued a preliminary injunction limited to plaintiffs—the NRA moved to intervene. In its motion, the NRA asserted an interest in obtaining a preliminary injunction covering its members and requested mandatory intervention under Federal Rule of Civil Procedure 24(a)(2) or, in the

alternative, permissive intervention under Rule 24(b)(1). The NRA subsequently filed a separate action in which it challenges the ATF rule and seeks preliminary injunctive relief. *See NRA v. ATF*, No. 3:23-cv-1471 (N.D. Tex.).

 The questions presented are the following:

1. Whether the district court correctly recognized that the NRA fails to satisfy the prerequisites for mandatory intervention, and

2. Whether the district court acted within its discretion in declining to authorize permissive intervention.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

This procedural dispute centers on an attempt to intervene in a district court action challenging a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) rule. That rule interprets the National Firearms Act of 1934 (NFA), 26 U.S.C. § 5801 *et seq.*, which regulates firearms that can "be used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at A395 (1954), including powerful "concealable weapon[s]," *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion), like "short-barreled rifles," *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (quotation marks omitted). Among other things, the Act requires that these short-barreled rifles be taxed and registered. *See* 26 U.S.C. §§ 5801-5802, 5811-5812, 5821-5822, 5841, 5845(a)(3), 5845(c).

2

To enforce the Act, ATF must therefore identify short-barreled rifles, meaning rifles with barrels shorter than 16 inches in length. *See* 26 U.S.C. § 5845(a)(3). The Act defines a "rifle" as a firearm designed and intended to be fired from the shoulder. *See id.* § 5845(c).

In January 2023, ATF issued the challenged rule, which explains when a firearm qualifies as a rifle in circumstances where the firearm includes a rearward attachment marketed as a "stabilizing brace." *See* 88 Fed. Reg. 6478. The rule explains that such firearms constitute rifles if the brace can be shouldered and the firearm is otherwise designed and intended to be fired from the shoulder. *See id.* at 6574. The rule then describes certain categories of evidence that the agency believes will generally be probative in determining whether any particular firearm is designed and intended to be fired from the shoulder. *Id.* at 6574-75.

## B.     Procedural History

**1.** This appeal arises out of one of the many challenges to the stabilizing brace rule, including several cases in this circuit, *see, e.g.*, *Mock v. Garland*, No. 4:23-CV-95 (N.D. Tex.); *Britto v. ATF*, No. 2:23-CV-19 (N.D. Tex.); *Texas Gun Rights v. ATF*, 4:23-CV-578 (N.D. Tex.); *Watterson v. ATF*, No. 4:23-CV-80 (E.D. Tex.); *Texas v. ATF*, No. 6:23-CV-13 (S.D. Tex.), and in other circuits, *see, e.g.*, *Miller v. Garland*, No. 1:23-CV-195 (E.D. Va.), *appeal filed* No. 23-1604 (4th Cir.); *Firearms Regulatory Accountability Coal., Inc. v. Garland*, No. 1:23-CV-24 (D.N.D.); *Colon v. ATF*, No. 8:23-

CV-223 (M.D. Fla.).  The plaintiffs in the underlying case are the Second Amendment

Foundation, Rainier Arms, LLC, Samuel Walley, and William Green.  *See* ROA.40.

In January 2021, the Second Amendment Foundation[1] filed a challenge to

various ATF actions addressing when firearms with stabilizing braces may be short-

barreled rifles.  *See* ROA.18-57.  When the agency announced a notice of proposed

rulemaking on the subject, the district court held the case in abeyance for the next two

years pending the issuance of the final rule.  *See* ROA.174-222.  Once the final rule

issued, the Foundation filed an amended complaint seeking to vacate the rule under

the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, claiming that the rule

is contrary to the definition of "rifle," arbitrary and capricious, procedurally defective,

inadequately explained, an infringement of the Second Amendment right to keep and

bear arms, and unconstitutionally vague.  *See* ROA.239-48.

The Second Amendment Foundation moved for a preliminary injunction

shortly thereafter.  *See* ROA.249-50.  The motion asked the district court to

"postpon[e] the Arm Brace Rule until th[e] litigation's conclusion."  ROA.250.  In the

alternative, the motion asked the court to "enjoin[] the Agencies from enforcing the

'Arm Brace Rule[]' against the Plaintiffs."  ROA.250 (citation omitted); *see* ROA.248

(request in amended complaint for "a judgment preliminarily enjoining the Agencies'

enforcement of the Arm Brace Rule against Plaintiffs").

---

[1] This brief refers to the plaintiffs collectively as the Second Amendment
Foundation or Foundation.

While that motion was pending, the district court in *Mock v. Garland*, No. 4:23-CV-95 (N.D. Tex.), another challenge to the ATF rule, denied the plaintiffs there a preliminary injunction, and the plaintiffs appealed. A motions panel of this Court issued an injunction pending appeal. *See* Order, *Mock v. Garland*, No. 23-10319 (5th Cir. May 26, 2023). The panel made clear that the injunction was limited "to the Plaintiffs in th[at] case." *Id.* at 1 (emphasis omitted). This Court has since reversed the district court's denial of the motion for a preliminary injunction in *Mock*, finding a likelihood of success on the merits with respect to a procedural challenge under the APA and remanding to the district court for consideration of the other equitable factors. *See Mock v. Garland*, No. 23-10319, 2023 WL 4882763, at *20 (5th Cir. Aug. 1, 2023).

On the basis of the initial injunction pending appeal granted in *Mock*, the district court in this case issued a preliminary injunction running to the named plaintiffs "in th[e] case [below] only," pending resolution of *Mock*. ROA.572. The court did so because it expected *Mock* to "affect, if not control," the court's decision on plaintiffs' motion because the disputes were substantially similar. ROA.572.

Twelve days after the district court in this case issued the injunction running to plaintiffs, the NRA moved to intervene, requesting mandatory intervention under Federal Rule of Civil Procedure 24(a)(2) and, in the alternative, permissive intervention under Rule 24(b)(1). *See* ROA.620. The NRA argued that it needed to intervene because otherwise "its members may not be protected from enforcement of

the [rule] against them in a timely . . . manner." ROA.643. It asserted that the Second Amendment Foundation could not represent its interests because "the narrow scope of the injunctive relief" showed that the Foundation had "no present ability to ensure that the rights of the NRA's members are protected." ROA.644-45. And the NRA stated that it did not intervene earlier because it only "became clear that the [Foundation] could not adequately represent the interests of the NRA and its members" when the court granted a preliminary injunction limited to the Foundation. ROA.639-40.

**2.** The district court denied the NRA's motion to intervene. With respect to the request for mandatory intervention, the court held that the NRA failed to establish multiple prerequisites for intervention as of right. *See* ROA.1014-21. The court first observed that the NRA cannot demonstrate that the Second Amendment Foundation is inadequate to represent its interests, as both organizations share the same "ultimate objective" of vacating the rule. *See* ROA.1017. The issuance of a preliminary injunction properly limited to plaintiffs did not show otherwise, the court reasoned, because "if the typical advantages of litigation—and, conversely, the disadvantages of being a non-party—could serve as the basis for an adverse interest, then[] . . . a putative intervenor would always have an" adverse interest. ROA.1020.

The court also determined that, even assuming the Second Amendment Foundation did not adequately represent the interests of the NRA, the NRA's request for mandatory intervention would still fail because the request was not timely. *See*

6

ROA.1014-17. The court explained that the litigation began long ago and that the NRA had long been "aware of the rule and its potential impact," as evidenced by the fact that it "submitted a public comment" during rulemaking proceedings. *See* ROA.1015. It further explained that the NRA was on notice that the court might limit a preliminary injunction to the named plaintiffs in the case because the motion for a preliminary injunction "expressly limited the requested preliminary relief" and because broader relief is "the exception," not "the norm." ROA.1015.

The court emphasized that concerns about "injunction shopping" also militate against allowing the NRA's request for mandatory intervention. ROA.1016 (quotation marks omitted). Because the NRA had not identified any grounds for intervention beyond the fact that it was not already covered by the existing preliminary injunction in the case, the court warned that allowing intervention would "incentivize 'injunction shopping' among putative intervenors seeking to challenge agency actions" given that they could just "wait and watch as cases challenging agency actions percolated through the district courts" and then intervene if any court issued preliminary relief. ROA.1016. The district court recognized that this kind of "opportunism" runs contrary to the Federal Rules. ROA.1016.

With respect to the NRA's request for permissive intervention, the court explained that "the same considerations preventing intervention as of right also counsel against permissive intervention." ROA.1020. Specifically, the court reiterated that "the NRA is adequately represented by Plaintiffs" and that allowing the NRA to

intervene "would create a perverse incentive for putative intervenors to opportunistically join cases in which preliminary injunctions were already issued to similar plaintiffs." ROA.1020-21. The court therefore declined to authorize either form of intervention.

**3.** At about the same time the NRA initiated this appeal, it filed a new challenge to the rule in a separate lawsuit, *see NRA v. ATF*, No. 3:23-CV-1471 (N.D. Tex.). The NRA has moved for a preliminary injunction in that suit, *see* Motion for Preliminary Injunction, *NRA v. ATF*, No. 3:23-CV-1471 (July 24, 2023), Dkt. No. 8. The government's response to that motion is due on August 25, 2023, and the NRA's reply is due on September 8, 2023. *See* Scheduling Order, *NRA v. ATF*, No. 3:23-CV-1471 (Aug. 11, 2023), Dkt. No. 24.

## SUMMARY OF ARGUMENT

This appeal concerns the NRA's decision to wait and see whether the Second Amendment Foundation's challenge to ATF's stabilizing brace rule would bear fruit. ATF issued the rule in January 2023, but—unlike numerous other plaintiffs in this circuit and others—the NRA did not file a lawsuit. Instead, the NRA waited more than four months before moving to intervene in this suit and did so only after the district court granted a preliminary injunction. The NRA claimed that its asserted interest in obtaining preliminary relief for its members entitled it to mandatory intervention under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Rule 24(b)(1). But as the district court correctly recognized, the

NRA is not entitled to either form of intervention, and the NRA's contrary approach "stretch[es] far beyond the apparent reach of Rule 24(a) and create[s] an easy runaround to Rule 24's requirements." ROA.1020.

**A.** The NRA's request for mandatory intervention fails on multiple independent grounds.

As an initial matter, the NRA cannot show that disposing of this suit will "as a practical matter impair or impede" its asserted interest in obtaining preliminary relief for its members. Fed. R. Civ. P. 24(a)(2). This Court has recognized that no impairment exists if a would-be intervenor has a full and fair opportunity to vindicate its interest in a separate forum. *See Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525-26 (5th Cir. 1994). That is the case here, where the NRA could—and did—initiate a separate district court action challenging the rule and seeking a preliminary injunction. The Federal Rules do not entitle the NRA to simultaneously litigate the same arguments regarding the same rule in two different forums.

The NRA's delay in moving to intervene establishes an additional bar to mandatory intervention. Although the Second Amendment Foundation and many other plaintiffs promptly challenged the ATF rule, the NRA made no move to intervene in this or any other suit until the district court in this case entered a preliminary injunction—over four months after the rule issued. The district court did not abuse its discretion in concluding that this prolonged delay, which exceeds the periods this Court has found to be timely in many previous cases, precludes

9

mandatory intervention.  *See Rotstain v. Mendez*, 986 F.3d 931, 937-38 (5th Cir. 2021) (identifying as typical examples of timely intervention a three-week delay, 47-day delay, and one-month delay, respectively).

The NRA's contrary approach would deprive Rule 24(a)(2)'s limitations of any meaningful effect and would thus vastly expand the availability of mandatory intervention.  Under the NRA's theory, anyone affected by a government policy would have a right to intervene in any challenge to that policy in which a district court awards relief other than a nationwide injunction (in which case intervention would, of course, be unnecessary).  As the district court here recognized, that novel procedural entitlement would impose serious costs on litigants and courts: It would create "a perverse incentive for putative intervenors to opportunistically join cases in which preliminary injunctions were already issued to similar plaintiffs," ROA.1020-21, invite an "avalanche of motions to intervene," ROA.1021, and establish an end-run around the longstanding equitable principles disfavoring universal relief.  Those harms illustrate the dangers of disregarding Rule 24(a)(2)'s requirements and confirm that the district court correctly denied the NRA's request for mandatory intervention.

**B.**  For similar reasons, the district court acted well within its discretion in declining to authorize permissive intervention.  "[R]eversing a district court's decision denying permissive intervention" is "so unusual as to be almost unique."  *Rotstain*, 986 F.3d at 942 (quotation marks omitted).  The NRA comes nowhere near overcoming this deferential standard of review here, where the NRA's delay, ability to obtain full

10

relief in its separate district court action, and apparent "injunction shopping" all militate strongly against permissive intervention, ROA.1016 (quotation marks omitted).

## STANDARD OF REVIEW

This Court reviews de novo whether a motion to intervene as of right should have been granted, *see Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016), but reviews the district court's decision to deny such a motion on timeliness grounds for abuse of discretion, *see Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 2016). The denial of a request for permissive intervention is likewise reviewed for abuse of discretion. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984).

## ARGUMENT

### The District Court Properly Denied the NRA's Motion to Intervene

The district court properly declined the NRA's requests for mandatory intervention under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Rule 24(b)(1). The NRA has filed a separate lawsuit challenging the stabilizing brace rule, and a motion for a preliminary injunction is currently pending in that suit. The NRA does not identify any distinct interest that would be impaired if it cannot intervene in the case below. And regardless, the NRA's motion

to intervene was untimely and opportunistic, made only after the district court issued

a preliminary injunction for the Second Amendment Foundation.

### A.     The NRA Fails to Establish Multiple Prerequisites for Mandatory Intervention

To support a request for mandatory intervention, the would-be intervenor

must establish four elements: "(1) the application for intervention [is] timely; (2) the

applicant [has] an interest relating to the property or transaction which is the subject

of the action; (3) the applicant [is] so situated that the disposition of the action may, as

a practical matter, impair or impede his ability to protect that interest; (4) the

applicant's interest [is] inadequately represented by the existing parties to the suit."

*Rotstain v. Mendez*, 986 F.3d 931, 936-37 (5th Cir. 2021) (alterations in original)

(quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th

Cir. 1978)).  "Failure to satisfy any one requirement precludes intervention of right."

*Haspel & Davis Milling & Planting Co. v. Board of Levee Comm'rs of Orleans Levee Dist.*, 493

F.3d 570, 578 (5th Cir. 2007).  In this case, the NRA fails to establish multiple

elements: It asserts no interest that would be impaired by the disposition of this case

and the request to intervene is in any event untimely.

### 1.     The NRA Fails to Establish that Its Asserted Interests Will Be Unprotected Absent Intervention

The Federal Rules of Civil Procedure limit mandatory intervention to

circumstances where "disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest" and where the applicant's interests

12

are not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). The NRA has not demonstrated that these conditions are met.

**a.** This Court has found the practical impairment requirement to be satisfied when the disposition of a case would have "a potential res judicata or collateral estoppel effect" on the would-be intervenor, *United States v. City of Jackson*, 519 F.2d 1147, 1150-51 (5th Cir. 1975), where denying intervention would require the would-be intervenor to initiate a suit in which it would encounter new defenses, *see Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865-66 (5th Cir. 2019), and where the only alternative to intervention is litigation before a foreign tribunal, *see Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124-25 (5th Cir. 1970). In each of these situations, refusing intervention would have created substantial practical barriers to the would-be intervenor's ability to vindicate its asserted interest.

By the same token, no practical impairment exists if a would-be intervenor has a full and fair opportunity to assert its interest in another forum. As the Court has recognized, "[i]ntervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525-26 (5th Cir. 1994). In *Deus*, for example, the Court explained that because the would-be intervenor was "already participating in a lawsuit" against the defendant in another federal court, "he can protect any interest he has" in the course of that litigation. *Id.*

13

That principle prevents the NRA from demonstrating practical impairment here. The NRA's asserted interest (at 36) is obtaining "preliminary injunctive relief on behalf of the NRA and its members," but the disposition of the litigation below will have no bearing on the NRA's ability to pursue that interest in other forums. The district court's decision in this case will have no precedential or preclusive effect in other litigation. Because the NRA can advance its interests against the rule just as easily after this suit ends as it could before this suit began, the NRA faces no "adverse practical effect" that could support a right to intervene. *Securities & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972).

This conclusion is confirmed by the NRA's separate lawsuit challenging the stabilizing brace rule. At the same time the NRA sought appeal in this case, it also filed a complaint challenging the rule, and it has since filed a motion for a preliminary injunction seeking to bar enforcement of the rule against the NRA and its members on the same grounds that plaintiffs did in the case below. *See* Motion for Preliminary Injunction, *NRA v. ATF*, No. 3:23-CV-1471 (N.D. Tex. July 24, 2023), Dkt. No. 8. As in *Deus*, the NRA is thus "already participating in a lawsuit" and "can protect any interest [it] has" in that litigation. 15 F.3d at 525-26. The NRA may vindicate its asserted interest by proceeding with its separate lawsuit, where its preliminary injunction motion is now pending, rather than intervening here, where it must brief and argue this appeal and then, if successful, renew its preliminary injunction motion in district court.

Rule 24(a)(2) does not entitle the NRA to proceed in both forums at the same time. By continuing to request mandatory intervention while also proceeding with its district court suit, the NRA claims an entitlement to simultaneously litigate the same arguments challenging the same rule before two different judges. That approach threatens to multiply the costs of adjudicating the NRA's challenge without providing any corresponding benefits. Indeed, there is no apparent reason why, under the NRA's approach to this litigation, it would not have a right to intervene in every challenge against the rule in every district court across the country. Nothing in the Federal Rules or in this Court's precedent justifies that extraordinary result.

**b.** The NRA's attempts to show a practical impairment resulting from its inability to participate in this suit all fail.

The NRA first asserts (at 33) that it has an interest in not "filing another action at additional expense" that would be impaired without intervention. But the "inconvenience . . . caused by requiring [a movant] to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977); *see also, e.g.*, *Everest*, 475 F.2d at 1239 (holding that the "financial burden" or costs associated with initiating a separate action are "not the sort of adverse practical effect contemplated by Rule 24(a)(2)"); *Chapman v. Manbeck*, 931 F.2d 46, 48 (Fed. Cir. 1991) (similar). Were it otherwise, every would-be-intervenor would be able to show impairment. As this Court has warned, Rule 24(a)(2) does not create "rights of indiscriminate intervention" and instead "set[s]

bounds that must be observed." *United States v. Texas. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (quotation marks omitted).

The authorities on which the NRA relies confirm that any burden associated with filing a separate suit is not itself sufficient to satisfy the impairment requirement. In *CNA Metals*, for instance, which concerned the circumstances under which a law firm "must be allowed to intervene . . . to protect its contingent fee interest," this Court identified sufficient impairment only because filing a separate suit would have compelled the would-be intervenor to overcome a "potential statute of limitations defense," a "res judicata defense," and uncertainty over "personal jurisdiction," among other obstacles. 919 F.3d at 865-66. Likewise, in *Sierra Club v. Espy,* environmental organizations sued to compel the Forest Service to adopt a policy allegedly harming the timber industry, and timber industry representatives sought to intervene. 18 F.3d 1202, 1204-07 (5th Cir. 1994). The impairment requirement was satisfied there because the "*stare decisis* effect of the district court's judgment" would have barred the timber industry from obtaining in separate litigation a judgment requiring the Forest Service to adopt a different policy. *Id.* at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992)). And similarly, in *Ceres Gulf*, the Court allowed a government agency to intervene in a district court action that could have resulted in a judgment permanently undoing the effect of a prior agency proceeding. 957 F.2d at 1201-1204. No similar obstacles impair the NRA's ability to pursue its interests in its independent lawsuit challenging the rule.

16

In any event, the NRA's argument that separate litigation invariably establishes impairment is at odds with Rule 24's "practical" focus. Fed. R. Civ. P. 24(a)(2). There can be no impairment where, as here, the would-be intervenor has already decided to file a separate suit and has already undertaken the primary costs associated with that suit, including filing a complaint, paying a filing fee, and preparing a preliminary injunction motion. Under such circumstances, litigating in a separate forum entails little more than awaiting a district court decision and thus comes nowhere near establishing the sort of impairment required to implicate Rule 24.

The NRA next argues (at 33-34) that its interest in protecting its members would be impaired absent intervention because if the organization "is not allowed to intervene in th[e] action, its members may not be protected from enforcement of the Final Rule against them in a timely manner." But there is no basis to think that the district court here would adjudicate a motion for a preliminary injunction more quickly than any other district court, and any such speculation cannot support a right to intervene.

Similarly unavailing is the NRA's contention that it would suffer impairment from the "*stare decisis* effect of the district court's judgment." Br. 33 (quoting *Sierra Club*, 18 F.3d at 1206). As discussed above, the quoted language refers to a situation in which the possibility of conflicting judgments created a serious risk that the would-be intervenor would not be able to vindicate its interests in separate litigation. *See Sierra Club*, 18 F.3d at 1204-07. To the extent that the NRA suggests that a district

17

court judgment against the Second Amendment Foundation would have an adverse effect on the NRA, there is no basis for that assertion because that judgment would not bind the NRA.  And to the extent that the NRA suggests that the persuasive power of a merits ruling by the district court here may influence the NRA's independent litigation, it is well settled that the persuasive power of an opinion cannot support standing, *see Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023), much less intervention.

**c.** The denial of mandatory intervention was especially appropriate given the NRA's failure to show that its asserted interests are not "adequately represent[ed]" by the Second Amendment Foundation.  Fed. R. Civ. P. 24(a)(2).  It cannot be disputed that the NRA and the Second Amendment Foundation both mount similar statutory and constitutional attacks on the ATF rule, and that both organizations request that the district court set aside that rule.  *Compare* ROA.248 (Am. Compl.) (seeking "a judgment holding the Arm Brace rule unlawful" and "setting [it] aside"), *with* ROA.693 (Compl. in Intervention) (requesting that the district court "[v]acate, set aside[,] and hold unlawful the Final Rule").  Thus, the NRA is unable to show that the Second Amendment Foundation does not share "the same ultimate objective." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)).

The NRA insists (at 35) that the Second Amendment Foundation's interests are not aligned because it requested a preliminary "injunction . . . on behalf of [itself and

its] members—not the NRA's members."  But as the district court explained, the fact that a party receives a preliminary injunction running just to itself—as is appropriate, *see Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018) (Article III authorizes federal courts to grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury" (quotation marks omitted)); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.")—does not establish inadequate representation.  A preliminary injunction is relief that ensures that the litigating parties maintain their "relative positions" until "a trial on the merits can be held" in that litigation.  *University of Tex. v. Camenish*, 451 U.S. 390, 395 (1981).  Such "typical advantages of litigation—and, conversely, the[se such] disadvantages of being a non-party" cannot "serve as the basis for an adverse interest," as the district court recognized, because otherwise intervention could be justified in every case. ROA.1020.

## 2.    The NRA Fails to Establish that Its Motion to Intervene Was Timely

The NRA's delay in moving to intervene provides an independent basis for affirmance.  In determining whether a request for mandatory intervention satisfies the timeliness requirement, courts consider a variety of factors, including "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances."

19

*Rotstain*, 986 F.3d at 937.  A district court's conclusion that the timeliness requirement precludes mandatory intervention is reviewed for abuse of discretion.  *See Edwards*, 78 F.3d at 1000.

**a.** The district court acted well within its discretion in classifying the NRA's motion as untimely.  Because the NRA's asserted interest in this litigation is to bar enforcement of the rule, the NRA "reasonably should have known of [its] interest in the case" at the latest when the final rule issued, *Rotstain*, 986 F.3d at 937 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977)).  The Second Amendment Foundation filed its challenge on January 21, 2021, *see* ROA.18-57, the NRA submitted a comment opposing the rule at the notice-and comment-stage on September 8, 2021, *see* ROA.705-28, and ATF published the rule on January 31, 2023, *see* ROA.282.  That publication gave this suit practical stakes, and it was at that point that many other plaintiffs filed challenges against the rule.

But the NRA did not move to intervene until June 6, 2023—more than four months after the rule issued.  By that time, the NRA had been aware of the rulemaking for almost two years.  *See* ROA.620.  Even as different groups of plaintiffs filed challenges against the rule in district courts across the country, *see supra* pp. 6-7, and even as courts denied preliminary injunctions, leading to appeals, *see Mock v. Garland*, No. 4:23-CV-95 (N.D. Tex.), *appeal filed* No. 23-10319 (5th Cir.); *Miller v. Garland*, No. 1:23-CV-195 (E.D. Va.), *appeal filed* No. 23-1604 (4th Cir.), the NRA did

20

not act.  Only after the district court here entered an injunction for plaintiffs did the NRA move to intervene.

That months-long delay far exceeds the "much shorter" periods at issue in many cases where this Court has found intervention to be timely.  *Rotstain*, 986 F.3d at 938.  The Court has cited as typical examples of timely intervention cases involving a three-week delay, a 47-day delay, and a one-month delay, respectively.  *See id.*  Those relatively brief periods pale in comparison to the more than four-month delay here, and that delay is especially difficult to excuse given the NRA's awareness of and involvement in the rulemaking at issue and the other prompt challenges brought by other advocacy organizations and individuals.  The district court therefore did not abuse its discretion in concluding that the NRA failed to establish timeliness.

**b.** The district court correctly recognized that the NRA's delay in this case was particularly significant because it raises concerns about "injunction shopping." ROA.1016 (quotation marks omitted).  The NRA does not that dispute that many other entities promptly challenged the rule and that in the rule's early days, multiple district courts decided motions for preliminary injunctions.  *See supra* pp. 6-8.  Yet the NRA did not intervene in any of those cases.  Instead, the NRA "only sought to Intervene once [the district court here] *granted* Plaintiffs' motion for preliminary injunction." ROA.1016.  Given that context, the district court understandably expressed concern that the NRA's approach may reflect an "opportunistic" attempt at "injunction shopping." ROA.1017 (quotation marks omitted).  And no matter what

motivated the NRA's litigation decisions, the district court properly rejected the premise that anyone affected by a government policy is entitled to intervene in any challenge to that policy in which a court awards relief. Here, for instance, the NRA's approach would have required the district court "to permit any gun owner in America with a stabilizing brace to intervene as a matter of right in this case because they, too, are not protected by the Court's preliminary injunction," which ran only to named plaintiffs. ROA.1020.

That procedural entitlement would, if accepted, inflict significant harms on litigants and courts. As the district court emphasized, the NRA's approach would "create a perverse incentive for putative intervenors to opportunistically join cases in which preliminary injunctions were already issued to similar plaintiffs." ROA.1020-21. It would also invite an "avalanche of motions to intervene" in cases involving challenges to government policies, ROA.1021, undermining the efficiency principles the Federal Rules aim to protect, *see* Fed. R. Civ. P. 1. And it would inhibit percolation of issues among the district courts, as rather than filing suit themselves, litigants "would be wise to wait and watch" and only seek to intervene once a district court discloses its views on the merits. ROA.1016.

Although these harms alone are sufficient to justify the district court's decision to deny mandatory intervention, the NRA's approach also promises to establish an end-run around the longstanding equitable principles disfavoring nationwide relief. Just this term, Justice Gorsuch hailed those principles as "foundational" and explained

22

how they promote the separation of powers and other essential values. *United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in the judgment). Consistent with this guidance, the district court limited the preliminary injunction in this case to the plaintiffs. ROA.572. Under the NRA's logic, however, such limits become largely illusory: Where "a district court issues a preliminary injunction only as to the plaintiffs," all would-be intervenors could invoke mandatory intervention and then request the same injunctive relief as other parties. ROA.1016. In that circumstance, a single district court would effectively determine the validity of a government policy on a nationwide basis.

      **c.** The NRA's attempts to establish timeliness are unpersuasive.

      The NRA primarily argues (at 20) that it could not intervene earlier because it only learned that the Second Amendment Foundation would not represent its asserted interest when the district court issued a preliminary injunction limited to the Foundation. This argument fails to persuade. The NRA cannot reasonably claim that it was unaware that the district court might limit preliminary injunctive relief to the Foundation when that result is clearly contemplated by applicable equitable principles and by the Foundation's requests for relief.

      In both the amended complaint and in the motion for a preliminary injunction, the Second Amendment Foundation requested not only that the rule be postponed or set aside, but it also asked for a preliminary injunction barring enforcement of the rule against the named plaintiffs. *See, e.g.*, ROA.250 (asking the court to "enjoin[] the

Agencies from enforcing the 'Arm Brace Rule[]' against the Plaintiffs" (citation omitted)); ROA.248 (requesting "a judgment preliminarily enjoining the Agencies' enforcement of the Arm Brace Rule against Plaintiffs"). And even if the Foundation had not requested that relief, it is commonplace—and appropriate—for a court to issue an injunction running only to the parties before it. *See Department of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in grant of stay) (noting the "traditional system of lower courts issuing interlocutory relief limited to the parties at hand"); *see supra* p. 24.    The NRA similarly errs in asserting (at 20-21) that it was caught off-guard by the preliminary injunction because plaintiffs brought APA claims, and "vacatur is the normal remedy under the APA." Even assuming that is true at final judgment, *but see* Brief for the Petitioners at 40-44, *United States v. Texas*, No. 22-58 (U.S. Sept. 12, 2022), that has no bearing on whether the NRA could have foreseen that the district court might issue a preliminary injunction limited to the plaintiffs in the case before it. As this Court recently reiterated, the issuance of a preliminary injunction with nationwide effect is not "the norm" even where a court finds a likelihood of success on an APA claim. *Mock v. Garland*, No. 23-10319, 2023 WL 4882763, at *19 (5th Cir. Aug. 1, 2023) (quoting *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam)).

The NRA's fallback arguments fare no better. Although the NRA suggests that the timeliness requirement is satisfied whenever the relevant delay is a year or less, the decision on which it relies does not support that suggestion. *See* Br. 44 (citing *Diaz,*

427 F.2d at 1126).  In that decision, this Court determined that "[u]nder the[]
circumstances" of a particular case, a district court did not abuse its discretion in
treating a one-year delay as timely.  *Diaz*, 427 F.2d at 1125-26.  That is a very different
scenario than this one, where it is the NRA that bears the burden of showing that the
district court's timeliness analysis reflects an abuse of discretion.  Regardless, as this
Court has emphasized, timeliness "is contextual."  *Sierra Club*, 18 F.3d at 1205.  Here,
where the NRA had two years of notice about the rule, where others promptly
challenged the rule, and where the NRA's conduct raises injunction shopping
concerns, context confirms that the district court acted well within its discretion in
deeming the motion to intervene untimely.

No more successful is the NRA's contention (at 23-24) that its motion was
timely because it waited to intervene until a time when intervention would not have
prejudiced the parties or the court.   But the NRA's delay prejudiced both.  *See*
ROA.1017 (recognizing that the government "face[s] some prejudice in having to
pivot last second to address an additional plaintiff").  The district court issued an
injunction to the named plaintiffs here, but it did so only for the duration of an
expedited appeal in *Mock v. Garland*, No. 23-10319 (5th Cir.), because the motions
panel in that case issued an injunction pending appeal to the named plaintiffs there.
*See* ROA.572.  The NRA's intervention would have thus required the parties and the
court to go beyond the four corners of that injunction pending appeal to resolve the

NRA's request for preliminary relief, and the parties and the court would have needed to do so on a highly expedited basis.

More broadly, as explained above, the government and the legal system as a whole would suffer significant prejudice if prospective litigants were entitled to wait as district court challenges to an agency rule percolated in the courts and then intervene in any case where a district judge issued a preliminary injunction to the named plaintiffs. Such "opportunistic 'injunction shopping' under the auspices of 'timely' interventions to protect a threatened interest" would significantly tip the scales against the government. ROA.1017. That "asymmetric" approach, providing "a nearly boundless opportunity to shop for a friendly forum," should be rejected. *See Department of Homeland Sec.*, 140 S. Ct. at 601 (Gorsuch, J., concurring in the grant of stay).

In contrast to these significant harms, the NRA fails to identify any meaningful prejudice resulting from the district court's denial of its request for mandatory intervention. The NRA briefly asserts (at 27-28) that it would suffer prejudice absent intervention because its members may be subject to the rule, and it may not receive the same relief elsewhere that plaintiffs did in the litigation below. But again, the NRA has a full and fair opportunity to seek relief in its independent litigation against the rule; it suffers no prejudice from that opportunity. *See supra* pp. 15-22.

The NRA is likewise mistaken in contending (at 29-30) that it is more efficient for a would-be intervenor to wait to see if a district court will enter nationwide

preliminary relief before seeking to intervene. Rule 24(a)(2)'s timeliness requirement reflects a judgment that judicial economy is best served when third parties with an interest in a dispute promptly alert district courts that their interests may not be represented, so that those courts can manage the litigation.

This case illustrates the wisdom of that judgment. Nothing prevented the NRA from bringing a timely challenge to the stabilizing brace rule. And the NRA was on notice from the outset of the litigation brought by the Second Amendment Foundation that the court might issue preliminary relief to the parties in the litigation before it. Had the NRA timely moved to intervene the court could have resolved the NRA's request for a preliminary injunction at the same time as the Second Amendment Foundation's. Instead, the NRA's delay precipitated an extra round of briefing in district court, an expedited appeal to this Court, and a later filed independent district court action. That is far from an efficient approach to resolving the NRA's claims.

### B.    The District Court Acted Well Within Its Discretion in Declining to Authorize Permissive Intervention

For many of the same reasons that the NRA cannot intervene as of right, the district court did not abuse its discretion in denying the request for permissive intervention.

Rule 24(b)(1) specifies that if a would-be intervenor files a timely motion and identifies a common question of law or fact, a district court "may" permit

intervention.  Consistent with that language, this Court has held that permissive intervention "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984) (alterations in original) (quotation marks omitted).  "[R]eversing a district court's decision denying permissive intervention" is thus "so unusual as to be almost unique." *Rotstain*, 986 F.3d at 942 (quoting *New Orleans Pub. Serv.*, 732 F.2d at 471).  Indeed, decades after the adoption of the Federal Rules, this Court noted that it had "never reversed a denial of permissive intervention," *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (quoting *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 n.10 (5th Cir. 1993) (per curiam)), and the NRA does not highlight any reversals in the intervening years.

This case provides no occasion to depart from that paradigm.  In deciding whether to authorize permissive intervention, courts consider timeliness, the "nature and extent of intervenors' interest," and the "effect [of intervention] on the existing parties." *New Orleans Pub. Serv., Inc.*, 732 F.2d at 472 n.40, 473 (quotation marks omitted).  Thus, the same features of this case that preclude mandatory intervention also confirm that the district court acted within its discretion in declining to authorize permissive intervention.

First, the NRA's delay in moving to intervene forecloses both types of intervention.  "Like intervention of right, permissive intervention must be timely,"

28

and where a motion is untimely, "no further analysis is needed" to reject a request for permissive intervention. *St. Bernard Par. v. LaFarge N. Am., Inc.*, 914 F.3d 969, 976 (5th Cir. 2019). Because the NRA's motion to intervene is untimely for the reasons set forth above, *see supra* pp. 22-30, this Court can affirm the district court's permissive intervention denial without any further analysis.

Second, the NRA's separate litigation provides an additional ground for declining to authorize permissive intervention. Permitting the NRA to intervene would require the parties to litigate the same arguments about the same rule in two different forums, resulting in duplicative efforts, generating potentially serious conflicts, and providing no corresponding benefits. The NRA sets forth no explanation as to why it should be allowed to multiply the demands on the government and the courts. Nor does the NRA explain what occurs if the courts reach two different conclusions.

Finally, the district court's concern about injunction shopping also justifies its decision not to allow permissive intervention. As explained above, and as detailed by the district court, *see* ROA.1016-30, injunction shopping creates substantial costs for parties, courts, and the legal system as a whole, and should not be countenanced.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

ABBY C. WRIGHT
SEAN R. JANDA
STEVEN H. HAZEL

*s/ Ben Lewis*
BEN LEWIS
*Attorneys, Appellate Staff*
*Civil Division, Room 7250*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2494*
*benjamin.r.lewis@usdoj.gov*

August 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Ben Lewis*
Ben Lewis

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7276 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Ben Lewis*
Ben Lewis