No. 23-10707

# In the United States Court of Appeals For the Fifth Circuit

SECOND AMENDMENT FOUNDATION INCORPORATED, ET AL,

*Plaintiffs*

THE NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED,

*Movant-Appellant*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; STEVEN DETTELBACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE BUREAU OF ALCOHOL TOBACCO FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of Texas, Dallas Division No. 3:21-cv-00116

## MOVANT-APPELLANT'S REPLY BRIEF

WILLIAM A. BREWER III
MATTHEW H. DAVIS
NOAH PETERS
Brewer Attorneys & Counselors
1717 Main Street, Suite 5900
Dallas, TX 75201
(214) 653-4000
nbp@brewerattorneys.com

August 21, 2023                    Counsel for Movant-Appellant

# TABLE OF CONTENTS

REPLY ....................................................................................................... 1

A.  Intervention to Expand an Injunction is Appropriate and Supported by Precedent ................................................................................................. 2

B.  The NRA Timely Intervened, and Defendants' Arguments Ignore this Court's Precedent on Timeliness......................................................... 4

C.  Defendants' "Injunction Shopping" Argument Ignores the Scope of the *Mock* Injunction ............................................................................................... 8

D.  Defendants' Impairment Analysis Misses the Mark..................................... 9

E.  Defendants Fail to Address the Fact that SAF Does Not—and Cannot— Represent the NRA's Interests, Meaning the NRA Necessarily Demonstrated Inadequacy of Representation ...........................................................12

F.  The District Court Abused its Discretion in Denying Permissive Intervention 13

CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ainsworth v. Moffett Engineering, Ltd.*,
　716 F.3d 174 (5th Cir. 2013)................................................................7

*Alliance for Hippocratic Medicine v. Food & Drug Administration*,
　No. 23-291375, 2023 WL 2913725 (5th Cir. Apr. 12, 2023)...........11

*Allstar Mktg. Grp., LLC v. AFACAI*,
　No. 20-CV-8406 (JPC), 2021 WL 75138 (S.D.N.Y. Jan. 8, 2021) ....3

*Berger v. N. Carolina State Conf. of the NAACP*,
　142 S. Ct. 2191 (2022)......................................................................13

*Brumfield v. Dodd*,
　749 F.3d 339 (5th Cir. 2014)..............................................................9

*California v. Health & Human Servs.*,
　390 F. Supp. 2d 1061 (N.D. Cal. 2019).............................................3

*Ceres Gulf v. Cooper*,
　957 F.2d 1199 (5th Cir. 1992)............................................................9

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
　473 U.S. 432 (1985)............................................................................2

*Data Mktg. P'ship v. United States Dep't of Lab.*,
　45 F.4th 846 (5th Cir. 2022)...............................................................7

*Deus v. Allstate Ins. Co.*,
　15 F.3d 506 (5th Cir. 1994)................................................................1

*E.E.O.C. v. Regis Corp.*,
　No. 99 C 8270, 2001 WL 1911025 (N.D. Ill. Jan. 17, 2001) .............2

*Field v. Anadarko Petroleum Corp.*,
　35 F.4th 1013 (5th Cir. 2022).............................................................4

*Kirk v. Comm'r of Soc. Sec. Admin.*,
　987 F.3d 314 (4th Cir. 2021)..............................................................2

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ...........................................................2

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    884 F.2d 185 (5th Cir. 1989)...............................................................14

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005)...............................................................................2

*Mock v. Garland*,
    No. 23-10319, 2023 WL 4882763 (5th Cir. Aug. 1, 2023)................7

*North Dakota v. EPA*,
    No. 3:15-cv-59, Dkt. No. 250 (D.N.D. Sept. 18, 2018) .....................3

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014) .........................................................14

*Robertson v. Bartels*,
    890 F. Supp. 2d 519 (D.N.J. 2012).....................................................3

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994)...........................................................4, 9

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977).............................................................5, 6

*Trans World Airlines, Inc. v. Mattox*,
    712 F. Supp. 99 (5th Cir. 2015)...........................................................3

*United States v. Texas*,
    143 S. Ct. 1964 (2023) (Gorsuch, J., concurring in the judgment).....................7

*VanDerStok v. BlackHawk Mfg. Grp. Inc.*,
    No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3,
    2022) ................................................................................................3, 4

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Commission*,
    834 F.3d 562 (5th Cir. 2016)...........................................................11

**Other Authorities**

Firearms Policy Coalition, Internal Revenue Service Form 990 for the
2020 Calendar Year (November 2021), *available at*
https://www.causeiq.com/organizations/view_990/472460415/5c0
840c8f7270882f008293087846307....................................................................8

Second Amendment Foundation, Internal Revenue Service Form 990
for the 2022 Calendar Year (July 2023), *available at*
https://www.saf.org/wp-content/uploads/2023/07/SAF-2022-Form-
990.pdf......................................................................................................8

Second Amendment Foundation, "SAF Invites NRA Members to Join
After Judge Denies Intervention" (June 30, 2023), *available at*
https://www.saf.org/saf-invites-nra-members-to-join-after-judge-
denies-intervention/ .......................................................................12

# REPLY

"The intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved[.]"[1] Defendants' position, and the decision below, would flip the intervention rule's purpose on its head, necessitating either a flood of separate lawsuits to challenge an agency action or a flood of premature interventions whenever there is some risk—no matter how slight—that a rule might be preliminary enjoined against some persons but not others. Defendants' invitation to redefine the standards for intervention by adding an unfounded "injunction shopping" exception should be rejected.

Here, the National Rifle Association ("NRA") satisfies all the requirements for intervention as of right: (1) it timely filed its motion to intervene when timeliness is evaluated by the appropriate standard, rather than the standard used by Defendants and the District Court; (2) the NRA unquestionably has an interest relating to the underlying lawsuit that will be impaired or impeded absent intervention; (3) the existing plaintiff, the Second Amendment Foundation ("SAF"), does not—and cannot—adequately protect the NRA's interests. Further, the District Court abused its discretion in denying permissive intervention. Thus, the District Court's denial of intervention should be reversed.

---

[1] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994).

A.    **INTERVENTION TO EXPAND AN INJUNCTION IS APPROPRIATE AND SUPPORTED BY PRECEDENT.**

Defendants seek to frame the NRA's unremarkable attempt to intervene and expand injunctive relief as an inappropriate attempt to "injunction shop." But Defendants' suggestion that the NRA is engaged in illicit "injunction shopping" ignores this Court's precedent.

Seeking to achieve equal treatment of similarly-situated persons is the law's most basic purpose.[2] It is also a basic purpose of the intervention rules:

> The reasons for avoiding a multiplicity of suits are plain. Multiple lawsuits tax judicial resources and **frustrate efforts to achieve consistent results in similar cases**. Furthermore, multiple lawsuits could gravely prejudice the rights of some plaintiffs through the operation of *stare decisis*. **A plaintiff could be prejudiced by the precedential impact of an unfavorable decision in another lawsuit, closely related to his, but in which he was excluded from participation and therefore could not control**.[3]

As another court has stated: "Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that we must act alike in all cases

---

[2] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (holding that the Equal Protection Clause directs "that all persons similarly situated should be treated alike"); *see also Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005) (noting "the basic principle of justice that like cases should be decided alike"); *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (noting the "fundamental norm of administrative procedure requires an agency to treat like cases alike," and observing that "a federal agency can be said to be at its most arbitrary when it treats similar situations dissimilarly") (internal formatting omitted).

[3] *E.E.O.C. v. Regis Corp.*, No. 99 C 8270, 2001 WL 1911025, at *1 (N.D. Ill. Jan. 17, 2001) (emphasis added).

of like nature."[4]

But, according to Defendants, the desire of the NRA to achieve the same protection for its members that has been granted to those of SFA is actually prohibited "injunction shopping." "Injunction shopping" is such a pernicious evil, according to Defendants, that the normal rules of intervention must be bent to create an almost *per se* rule against parties intervening to modify the scope of an injunction. This defies precedent approving intervention to expand an injunction.[5] Indeed, Defendants' position would impose an almost *per se* bar on seeking to intervene in a suit with the hope of expanding the scope of an injunction under the guise of extirpating "injunction shopping" from our legal system. There is no warrant for arbitrarily limiting the intervention rules in this manner, and doing so is at odds with the basic purposes of Rule 24 that like cases are treated alike and an unnecessary multiplicity of suits are avoided.

---

[4] *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (cleaned up).

[5] *See Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99, 103–06 (5th Cir. 2015) (permitting intervention as of right and permissively expanding scope of injunctive relief); *see also VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *5 (N.D. Tex. Nov. 3, 2022) (permitting intervention for purpose of expanding previously issued injunctive relief by granting injunctive relief to intervenor and its customers); *Allstar Mktg. Grp., LLC v. AFACAI*, No. 20-CV-8406 (JPC), 2021 WL 75138, at *3 (S.D.N.Y. Jan. 8, 2021) (non-party adversely affected by injunction could intervene); *California v. Health & Human Servs.*, 390 F. Supp. 2d 1061, 1065-66 (N.D. Cal. 2019) (noting previous ruling permitting intervention and granting expansion of preliminary injunction to intervening party because "the Court would be loath to deny relief solely on the basis of a few months' delay, particularly given the overlapping injunction"); *North Dakota v. EPA*, No. 3:15-cv-59, Dkt. No. 250 (D.N.D. Sept. 18, 2018) (clarifying that Iowa, an intervenor, was covered by the same injunction as states that were original parties to the suit); *Robertson v. Bartels*, 890 F. Supp. 2d 519, 527 (D.N.J. 2012) (finding organizations representing candidates affected by injunction permitted to intervene as of right).

According to Defendants, once a court has issued a preliminary injunction, a party seeking the same relief for its own members cannot avoid being subjected to the burdens and expenses of filing an additional suit. Instead, a party must thenceforth always bear the risk that a different district court judge will deny the same relief given to a similarly-situated party. The risk of differential outcomes at the district court level, far from being a flaw of our justice system, is (according to Defendants) a feature that is so fundamental that no party should be able to ever mitigate it, and never by means of Rule 24. But, as noted above, the intervention rules regard the risk of differing outcomes and unequal treatment as an evil the they are supposed to mitigate, not an illicit motivation for seeking to intervene.

### B. THE NRA TIMELY INTERVENED, AND DEFENDANTS' ARGUMENTS IGNORE THIS COURT'S PRECEDENT ON TIMELINESS.

Defendants' attempt to re-write Rule 24 to bar what they deem "injunction shopping" defies ordinary intervention rules. Timeliness is measured from when the putative intervenor knew **or** should have known the existing parties would not adequately represent its interests—not from when the underlying lawsuit was filed or when the Final Rule was published.[6] Further, the key concern in measuring timeliness is the prejudice caused by any delay, not the delay itself.[7] As this Court

---

[6] *VanDerStok*, 2022 WL 16680915, at *5; *see also Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (finding intervention motion timely when filed within two weeks of learning interests were not adequately protected).
[7] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

has noted in rejecting the notion that timeliness should be measured from the date

suit was filed:

> [A] rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention. It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high. Often the protective step of seeking intervention will later prove to have been unnecessary, and the result will be needless prejudice to the existing parties and the would-be intervenor if his motion is granted, and purposeless appeals if his motion is denied. In either event, scarce judicial resources would be squandered, and the litigation costs of the parties would be increased. Such a rule would also mean that many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on. These effects would be inconsistent with two important purposes of Rule 24: to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation. **Therefore, the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely.**[8]

But in their rush to prohibit something the intervention rules are designed to

facilitate—a single issue being litigated in a single suit instead of multiple suits—

Defendants would impose an enhanced "timeliness" standard that assumes prejudice

from the mere fact of the intervention and measures timeliness from the earliest

moment that the putative intervenor was aware of the suit or the facts giving rise to

---

[8] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–65 (5th Cir. 1977) (emphasis added).

the suit. Even a "harm" as trivial as having to file an additional brief[9] would count as cognizable "prejudice"—even if the alternative would be an entirely separate suit in which many more briefs would have to be filed.

Defendants bemoan that, "[h]ad the NRA timely moved to intervene the court could have resolved the NRA's request for a preliminary injunction at the same time as SAF's," charging that the "delay" "precipitated an extra round of briefing in district court, an expedited appeal to this Court, and a later filed independent district court action."[10] But the appeal and later-filed district court action were necessitated by the denial of intervention and the District Court's direction to file a separate suit, not by any "delay." And "an extra round of briefing" has never been recognized as cognizable "prejudice" sufficient to justify denial of intervention.

Further, the imagined early intervention by the NRA would have been a "protective intervention," occurring when parties "ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high."[11] Specifically, the NRA would have had to somehow foresee that the District Court would deny broad injunctive relief and grant only narrow relief benefitting not just the specific parties to the litigation but also

---

[9] Opp. 27.
[10] *Id*.
[11] *Stallworth*, 558 F.2d at 265.

6

their members, while at the same time excluding the members of similarly-situated gun rights groups. Imagining ideal litigation sequences based on discretionary and unforeseeable judicial rulings, and then denying intervention whenever the actual sequence of litigation does not follow the imagined ideal, would necessitate wasteful protective interventions that would drain party and judicial resources for no good reason and would deprive Rule 24 of its practical utility.

Indeed, Defendants' reasoning overlooks the general principle that, under the Administrative Procedure Act ("APA"), the defective feature of a rule is either struck down for everyone or not at all. Based almost entirely on a Supreme Court concurrence issued in late June of this year,[12] Defendants contend that the NRA should have somehow known that any injunction would be limited to the named parties in the case and their members, and not the NRA's members. This ignores that a concurrence joined by a minority of Supreme Court justices is not law,[13] along with APA principles and the arguments of the parties in *Mock* and in the suit below.[14] Indeed, in *Mock*, this Court reiterated that "in certain circumstances, nationwide relief is appropriate and may be necessary for the benefit of all parties."[15] And this Court has previously noted that vacatur of unlawful parts of rules, i.e. relief equally

---

[12] *United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in the judgment).
[13] *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 178 (5th Cir. 2013) ("The reasoning of a Supreme Court opinion that does not command a majority vote is not binding precedent.").
[14] Opening Br. 20 & nn. 105-108.
[15] *Mock v. Garland*, No. 23-10319, 2023 WL 4882763, at *20 (5th Cir. Aug. 1, 2023).

applicable to all affected parties, is the "default rule" under the APA.[16] The NRA's expectation that its members would be shielded by the "default rule" was reasonable. Most importantly, the NRA timely acted to protect its interests when it became clear relief would be provided to only the members of other gun rights groups and not the NRA's members.

### C.   DEFENDANTS' "INJUNCTION SHOPPING" ARGUMENT IGNORES THE SCOPE OF THE *MOCK* INJUNCTION.

Defendants' "injunction shopping" argument fails for other reasons as well: there has been no venue within the Fifth Circuit that was not governed by the *Mock* injunction order. And Defendants do not claim—nor could they—that the NRA lacks a legitimate connection to Texas.[17] Indeed, the SAF is based in Bellevue, WA— within the Ninth Circuit, not the Fifth—but no one contends that it engaged in forum-shopping (or judge-shopping) by filing suit in Texas.[18] The Firearms Policy Coalition is based in Nevada—also in the Ninth Circuit—but there was no issue with it filing the *Mock* action in Texas.[19] There is no reason why "forum shopping" or "injunction shopping" principles should bar the NRA from intervening in an existing

---

[16] *Data Mktg. P'ship v. United States Dep't of Lab.*, 45 F.4th 846, 859–60 (5th Cir. 2022).
[17] *See* ROA.665, 696, 799.
[18] Second Amendment Foundation, Internal Revenue Service Form 990 for the 2022 Calendar Year (July 2023), *available at* https://www.saf.org/wp-content/uploads/2023/07/SAF-2022-Form-990.pdf.
[19] Firearms Policy Coalition, Internal Revenue Service Form 990 for the 2020 Calendar Year (November 2021), *available at* https://www.causeiq.com/organizations/view_990/472460415/5c0840c8f7270882f008293087846307.

suit in Texas, but not bar SAF from bringing suit in a state where it is not based and to which it has a far more tenuous connection than the NRA. Defendants' "injunction shopping" argument would inject new "forum shopping" principles into Rule 24 that do not appear in the rule's text and frustrate that rule's most basic purposes: to facilitate the speedy resolution of claims, avoid a multiplicity of suits, and avoid subjecting parties to conflicting rulings and the *stare decisis* effect of unfavorable precedent.

### D.   DEFENDANTS' IMPAIRMENT ANALYSIS MISSES THE MARK.

Defendants suggest that the NRA's ability to obtain relief in a separate suit forecloses any argument that its interests could be impaired in the instant case.[20] But demonstrating impairment of the interests of a third party seeking to intervene is a minimal burden.[21] "The impairment requirement ***does not*** demand that the movant be bound by a possible future judgment."[22] This Court has held that "an intervenor's interest is impaired by the *stare decisis* effect of the district court's judgment."[23]

Here, the NRA would similarly be harmed in its separate action by the *stare decisis* effect of an unfavorable ruling by the District Court. For example, if the

---

[20] Opp. 14.

[21] *Brumfield v. Dodd*, 749 F.3d 339, 344 n.2 (5th Cir. 2014) (citing *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) ("To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." (emphasis in original)).

[22] *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) (internal quotation marks omitted) (quoting *Brumfield*, 749 F.3d at 344) (emphasis in original).

[23] *Sierra Club*, 18 F.3d at 1207.

District Court found that SAF's members were not irreparably harmed by the Final Rule, such a determination would have a *stare decisis* effect upon the NRA and its members in its separate suit.

Further, Defendants' focus on the NRA's filing of a separate action is misplaced because it ignores the procedural history of this case and the predicament the NRA faced from developing case law related to the Final Rule. The NRA relied on the "default rule" under the APA that any determination related to the Final Rule would afford temporary protection from prosecution or enforcement to all affected parties—and not protect members of certain gun rights groups but not others.[24] When a narrower injunction was entered by this Court in *Mock*, the NRA immediately sought to intervene. The District Court erroneously denied intervention and indicated the NRA should file its own lawsuit to protect its members.

To ensure its members' interests were protected, the NRA filed its own lawsuit while also appealing the District Court's erroneous interpretation of the intervention rules. The new suit the NRA filed at the District Court's suggestion does not guarantee a lack of impairment of the NRA's interests here, as Defendants suggest. Indeed, the NRA expects in the new case Defendants will argue that the NRA cannot obtain injunctive relief due to delay in seeking such relief—delay that

---

[24] Br. for Movant-Appellant 20-21.

arises from the NRA's initial attempt to intervene here, which the NRA contends was incorrectly denied.

As this Court has noted, the potential need to file separate litigation if intervention is denied "is a decisive argument in favor of finding [the NRA's] interest to be impaired."[25] The fact that the NRA has in fact been forced, by the denial of intervention, to file its own separate suit confirms that it indeed has an interest in the outcome of this suit.

And the NRA has an interest in obtaining equal treatment for its members—like the interest enjoyed by the members of its fellow gun-rights group, SAF—that is more than sufficient to justify intervention.[26] Indeed, Defendants fail to acknowledge the basic reason that the NRA seeks to intervene: it suffers institutional injury every day that its members are subject to potential felony prosecution, but members of SAF are protected from such harm. On June 30, the same day the District Court denied the NRA's motion to intervene, SAF issued a Press Release titled,

---

[25] *CNA Metals*, 919 F.3d at 867.

[26] *See Alliance for Hippocratic Medicine v. Food & Drug Administration*, No. 23-291375, 2023 WL 2913725, at *11 (5th Cir. Apr. 12, 2023) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)) (finding associational standing where organization suffered "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources . . ."); *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Commission*, 834 F.3d 562, 567 (5th Cir. 2016) (noting associations are regularly found to have interest subject to impairment for intervention purposes when challenging regulatory schemes).

"SAF Invites NRA Members to Join After Judge Denies Intervention."[27] In its Press Release, SAF's founder and Executive Vice President stated that "the order denying NRA's intervention does not mean NRA members are out of luck. . . They can join SAF and be covered under the judge's ruling issued last month."[28] SAF's Executive Director added, "We will definitely welcome any NRA members wanting to join SAF."[29]

SAF's treatment of the NRA as a marketplace competitor means that the NRA has a legitimate interest in intervening in this action that has nothing whatsoever to do with "judge-shopping." Instead, the NRA merely seeks to ensure that its members receive equal treatment to those of SAF and that its members are not forced to join a different gun rights group to receive protection from potential felony prosecution.

### E. DEFENDANTS FAIL TO ADDRESS THE FACT THAT SAF DOES NOT— AND CANNOT—REPRESENT THE NRA'S INTERESTS, MEANING THE NRA NECESSARILY DEMONSTRATED INADEQUACY OF REPRESENTATION.

Defendants present only a cursory defense of the District Court's adequacy analysis, all but conceding that it was mistaken.[30] Notably, Defendants make no attempt to square the District Court's "adequacy" ground with the Supreme Court's

---

[27] Second Amendment Foundation, "SAF Invites NRA Members to Join After Judge Denies Intervention" (June 30, 2023), *available at* https://www.saf.org/saf-invites-nra-members-to-join-after-judge-denies-intervention/.
[28] *Id*.
[29] *Id*.
[30] Opp. 18-19.

decision last term in *Berger v. N. Carolina State Conf. of the NAACP*.[31] *Berger* described Rule 24's adequacy prong "as presenting proposed intervenors with only a minimal challenge."[32] And it clarified that any "presumption of adequate representation . . . *applies only when interests overlap fully*."[33]

Here, as the District Court itself found, SAF's interests do not overlap fully with the NRA's.[34] SAF's effort to use the District Court's denial of relief to the NRA as a recruiting tool shows that the SAF cannot adequately represent the NRA's interests or those of its members.

### F.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PERMISSIVE INTERVENTION.

In its Opening Brief, the NRA explained that it clearly satisfies all the elements for permissive intervention:  (1) the NRA timely filed the Motion; and (2) the NRA has a claim that shares common questions of law and fact with the existing case; and (3) the NRA's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties to the case.[35]

In response, Defendants invoke the District Court's flawed timeliness analysis, which wrongly found the NRA's intervention untimely under the standard of "[b]ecause [the NRA] could have intervened earlier, [it] should have intervened

---

[31] 142 S. Ct. 2191, 2203 (2022).
[32] *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022).
[33] *Id*. at 2204.
[34] ROA.1015
[35] Opening Br. 43-44.

earlier," shallow reasoning which the D.C. Circuit has found to be "an abuse of the court's discretion."[36]

Next, Defendants assert that "the NRA's separate litigation provides an additional ground for declining to authorize permissive intervention."[37] But they cite no case law for this proposition. And it does not fit within any of the three factors listed in Rule 24(b) for evaluating permissive intervention.[38] Indeed, the NRA had little choice after the District Court's ruling but to immediately file a separate lawsuit, as it otherwise risked a finding that its preliminary injunction motion would be considered untimely if it was forced to wait until this appeal was decided. Holding that the NRA's filing of a subsequent lawsuit retroactively justified the District Court's denial of permissive intervention would effectively insulate the District Court's ruling from review. Further, the NRA would still potentially be bound by the unfavorable *stare decisis* consequences of a ruling in the District Court adverse to the SAF and its members.

Tellingly, Defendants bemoan that allowing the NRA to intervene "would require the parties to litigate the same arguments about the same rule in two different forums, resulting in duplicative efforts, generating potentially serious conflicts, and

---

[36] *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).

[37] Opp. 29.

[38] *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).

providing no corresponding benefits."[39] But that reasoning favors allowing the NRA to intervene in the SAF's suit, not forcing the NRA to file its own separate lawsuit.

## CONCLUSION

The Court should reverse the district court's Memorandum Opinion and Order denying the NRA's motion to intervene and hold that the NRA may intervene under Federal Rule of Civil Procedure 24.

Dated: August 21, 2023

By: /s/ Noah Peters
WILLIAM A. BREWER III
MATTHEW H. DAVIS
NOAH PETERS
nbp@brewerattorneys.com
BREWER ATTORNEYS &
COUNSELORS
1717 Main Street, Suite 5900
Dallas, TX 75201
Telephone: (214) 653-4012

Counsel for Movant-Appellant

---

[39] Opp. 29.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font. This brief also complies with Federal Rule of Appellate Procedure 32(a)(7)(A) because it does not exceed 15 pages, and the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii), because it contains 3787 words, no more than half of the number specified in Rule 32(a)(7)(B)(i).

/s/ Noah Peters
NOAH PETERS

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ Noah Peters
NOAH PETERS